These appeals involve a question of whether Alabama Gas Corporation was acting as an owner or as a prime contractor at the time when there was a ditch cave-in on a pipeline project that resulted in the death and personal injuries of Travis and Randy Tanksley respectively. The appeals are from two judgments based upon jury verdicts rendered in favor of Alabama Gas Corporation and its inspector, Austin Smith.
The primary issue presented is stated by the plaintiffs as follows:
 "Did the trial court commit error in ruling that there was no prime contractor-subcontractor relationship between Alabama Gas Corporation and Roland Pugh Construction Company and, consequently, that the OSHA standards did not apply to Alabama Gas Corporation?"
 FACTS
On the morning of November 6, 1985, Randy Tanksley and his father, Travis Tanksley, employees with Roland Pugh Construction, were engaged in the process *Page 732 
of welding together pipes in the construction of a gas pipeline. The pipes were being laid in a ditch excavated by Roland Pugh Construction,[1] which was one of several construction companies that Alabama Gas had retained in order to construct a gas pipeline that would run from Verbena, Alabama, to the Cahaba Heights/Mountain Brook area near Birmingham, Alabama, a distance of 53 miles. While the two men were welding the pipes together, one of the dirt walls caved in, trapping both of them. Randy was not completely covered by the fallen dirt and he was quickly rescued. He sustained only injuries to his lower body. His father, Travis, however, was completely covered by dirt, and was not rescued until some 30 minutes later. He died as a result of internal injuries he had sustained.
Randy and his wife Rhonda and Doris Estelle Tanksley, the wife of Travis Tanksley and personal representative of his estate, sued Alabama Gas, Austin Smith, Roland Pugh Construction, certain employees of Roland Pugh Construction, and several fictitiously named parties.
In her wrongful death action, Doris Tanksley alleged that her husband's death was proximately caused by the combined negligent acts of the defendants. In their separate complaint, Randy and Rhonda Tanksley claimed damages for personal injuries and loss of consortium, respectively.
On January 18, 1988, the trial court, pursuant to the provisions of a pro tanto release executed by all of the plaintiffs, dismissed Roland Pugh Construction, certain of its employees, and several fictitiously named parties, with prejudice. That left Alabama Gas and its inspector, Austin Smith, as the only remaining defendants named in the two lawsuits, and based on their motion to consolidate, the trial court consolidated the two actions pursuant to Rule 42(a), A.R.Civ.P.
 I
As previously noted, the central question presented by plaintiffs is whether the trial court erred in determining that there was no prime contractor/subcontractor relationship between Alabama Gas Corporation and Roland Pugh Construction Company.
The alleged error arose when plaintiffs' attorney attempted to question an expert witness, Weaver. The OSHA standards were admitted into evidence as Plaintiff's Exhibit 24. Defendants went into detail on cross-examination of Mr. Weaver to show that the OSHA standards applied to Roland Pugh Construction Company.
Plaintiffs attempted to question Mr. Weaver about the applicability of the OSHA standards to Alabama Gas Corporation.
 "Q. What, if any, requirements [are] in the OSHA standards as far as inspections of a ditch?
 "MR. FRANKLIN: Judge, excuse me. I object. I don't know what requirement of inspection by Roland Pugh Construction Company has to do in any way with the issues in this case. I mean, it may be interesting, but it's time consuming to go into the Pugh's inspection duties.
 "MR. HAMBY: Your Honor, that has been established. I'm entitled to question this expert as to what the standards are. His interpretation of something is his interpretation.
 "THE COURT: You mean OSHA's standards for inspection.
 "MR. HAMBY: Right. They apply both to the practice of contractors and subcontractors.
 "MR. FRANKLIN: Well, Judge, the evidence is — we don't have any prime contractor and subcontractors. We have Roland Pugh Construction Company.
 "THE COURT: I understand that. I'll let you adduce that information. That's not to say that I'm ruling on the relevancy of it.
 "Q. Now Mr. Weaver, I want to ask you to read — they had you read a lot of provisions from the regulations and law. And, I'd like to ask you to read from the OSHA regulations which is Plaintiff's Exhibit 24. I'd like to ask you to read from Section 1926.16(C) and (D).
"* * * * *Page 733 
 "A. 'To the extent that a subcontractor [of any tier] agrees to perform any part of the contract, he also assumes responsibility for complying with the standards in this part with respect to that part. Thus the prime contractor assumes the entire responsibility under the contract and [the subcontractor] assumes responsibility with respect to his portion of the work.
 " 'With respect to subcontracted work, the prime contractor and any subcontractor or subcontractors shall be deemed to have joint responsibility. Where joint responsibility exists, both the prime contractor and his subcontractor or subcontractors, regardless of tier, shall be considered subject to the enforcement provisions of the Act.'
 "MR. FRANKLIN: Judge, I move to exclude that from the record. There is absolutely no evidence in this record that there was a prime contractor, subcontractor relationship on this job, and certainly not any prime contractor, subcontractor relationship between Alabama Gas Company and Roland Pugh Construction Company. And I think it's misleading to try to suggest that there was some sort of prime contractor, subcontractor responsibility here.
 "MR. HAMBY: There's certainly evidence of it, Your Honor. They had four different subcontractors out there doing different legs of this work. They were the prime. And it's on the record.
 "MR. FRANKLIN: Judge, now if he's going to testify, he ought to get under oath because he's certainly not under oath. And then there's no evidence in this record that supports what he just said or what that witness just read. And I move to exclude it as misleading.
"THE COURT: What evidence is there, Mr. Hamby?
 "MR. HAMBY: Your Honor, I think the contract and everything else creates an owner prime contractor sub situation.
 "THE COURT: All right, you're saying that you base it on the written contract that is in evidence?
 "MR. HAMBY: The written contract and all the facts that are in evidence of control —
"THE COURT: What other — sir?
 "MR. HAMBY: All the facts of who's out there and who's running the job.
 "THE COURT: I'll grant your motion. And, ladies and gentlemen, I instruct you to disregard what's been read. It's my ruling that it's not relevant to the facts of this case."
As can be seen, plaintiffs' counsel argued during the trial, and restates the argument here, that Alabama Gas, through the actions of its inspector, Austin Smith, effectively assumed control over the day-to-day operations of Roland Pugh Construction and its employees, specifically Randy and Travis Tanksley, and that this control by Alabama Gas established a prime subcontractor/subcontractor relationship between Alabama Gas Corporation and Roland Pugh Construction, and that Alabama Gas thereby undertook the responsibility for providing the employees of Roland Pugh Construction with a safe working environment pursuant to rules of the Occupational Safety and Health Administration ("OSHA").[2] *Page 734 
Plaintiffs also contended that Alabama Gas assumed the duty to provide a safe place to work and should have required that Roland Pugh Construction abide by certain safety rules promulgated by the Department of Labor and enforced by OSHA.[3] The plaintiffs, therefore, argued that Alabama Gas, through its inspector, Austin Smith, violated an assumed duty to provide Randy and Travis Tanksley with the safe working environment required under OSHA rules, when it, through its inspector, Austin Smith, failed to require Roland Pugh Construction to reinforce the dirt walls.
Alabama Gas, on the other hand, argued that the trial court did not commit error because, it says, "[t]here was no evidenceto establish any prime contractor/subcontractor relationshipbetween Alabama Gas Corporation and Roland Pugh ConstructionCompany." Alabama Gas argues that "[i]n the contract, RolandPugh Construction clearly and unambiguously retained controlover the manner in which the work was performed, and assumedall safety responsibility for its employees" and that "Pugh Construction expressly agreed to comply with all applicable laws and regulations, including OSHA." Alabama Gas argues, therefore, that "[h]ad the expert been allowed to express an opinion on the relationship between Alabama Gas and Pugh Construction, it would have been an opinion on the ultimate issue of duty or no duty that the jury was to decide in this particular case." (Emphasis in original). We agree with Alabama Gas that in this case the evidence does not show that Alabama Gas retained the right to control the manner in which the contract was performed, only the right to inspect the job site to insure compliance with contract specifications.
The jury returned verdicts in favor of the defendants, and the court entered judgments on those verdicts. The plaintiffs separately appealed, and pursuant to Rule 3(b), A.R.App.P., this Court has consolidated the two appeals.
 II
The standard of review for an appeal from a judgment based on a jury verdict, and subsequent denial of a motion for a new trial, was recently discussed in the case of Davis v. Ulin,545 So.2d 14, 15 (Ala. 1989), in which this Court stated the following:
 "Jury verdicts are presumed correct, and this presumption is strengthened by the trial court's denial of a motion for a new trial. Therefore, a judgment based on a jury verdict will not be reversed unless it is 'plainly and palpably' wrong. Ashbee v. Brock, 510 So.2d 214 (Ala. 1987). See, also, Jawad v. Granade, 497 So.2d 471 (Ala. 1986)."
In their motions for a new trial and also in their briefs filed with this Court, the plaintiffs argued that the trial court erred in two instances during the trial: 1) that the trial court erred in sustaining the defendants' objection to plaintiffs' Exhibit 26, an article entitled, Failures Resultingfrom Excavation — Their Causes and Prevention, by George F. Sowers; and 2) that, as a matter of law, there was evidence presented by the plaintiffs to establish the existence of a prime contractor/subcontractor relationship between Alabama Gas and Roland Pugh Construction, and that the trial court erred in not permitting them to show that Alabama Gas was a prime contractor on the project, and, therefore, subject *Page 735 
to the OSHA regulations. The trial court submitted to the jury the question whether Alabama Gas, through the actions of its inspector, Austin Smith, assumed or undertook responsibility for the safety of Roland Pugh Construction's employees, and instructed them as follows:
 "Now in this case, even though the contract between Alabama Gas and Roland Pugh Construction Company did not reserve the right of control to Alabama Gas insofar as the safety of Roland Pugh Construction Company employees, there are nevertheless certain factual circumstances under which a legal duty could arise. Under the law of Alabama, such a legal duty could arise, but only if you're reasonably satisfied from the evidence that Alabama Gas undertook or assumed actual responsibility for the safety of Roland Pugh employees in the performance of their work.
 "Now in this case, the Plaintiffs contend that Alabama Gas assumed or undertook the responsibility for the safety of Roland Pugh's employees through the conduct of one of its employees, namely Austin Smith, who Plaintiffs contend gave certain instructions to the foreman of the work crew, Billy Gilmore, prior to the cave-in. Now I instruct you, as a matter of law, that there is no evidence in this case of any other actions or conduct by Alabama Gas through any of its employees which could constitute assumption or undertaking of the responsibility for the safety of the contractor's employees."
Plaintiffs complained during the trial, and renew their complaint here, that the trial judge would not permit them to question their expert witness concerning the applicability of OSHA to Alabama Gas under the particular facts of this case. They contend that there was plenty of evidence to show that a prime contractor/subcontractor relationship existed between Alabama Gas and Roland Pugh Construction.
We first consider this ruling by the trial court that the plaintiffs could not question the expert because they failed to establish the existence of a prime contractor/subcontractor relationship between Alabama Gas and Roland Pugh Construction, as a matter of law.[4]
The record shows that on August 6, 1985, Alabama Gas entered into a contract with Roland Pugh Construction for the construction of a gas pipeline. The "General Conditions" section of that contract, specifically paragraph 12, states the following:
 "12. It is specifically understood that Contractor [Roland Pugh Construction Company] is an independent Contractor and that the Work to be performed hereunder shall be carried on by the Contractor according to its own methods and at its own risk subject only to compliance by the Contractor with the provisions of the Contract Documents. Contractor shall have full legal charge and control of Contractor's men engaged in the performance of the Work hereunder and Contractor shall be accountable to Company [Alabama Gas Corporation] only for prosecution of the Work provided for herein in an expeditious and workmanlike manner and for its completion in accordance with this Contract."
Paragraph 48 of the General Conditions states:
 "48. Contractor [Roland Pugh Construction Company] shall take all necessary precautions for the safety of the employees on the Work and shall comply with all applicable provisions of Federal, State and municipal safety laws to prevent accidents or injuries to persons or damage to property on or about or adjacent *Page 736 
to the premises where the Work is being performed."
Finally, paragraph 75 of the General Conditions states:
 "75. Pursuant to the provisions of the 'Occupational Safety and Health Act of 1970,' (the 'Act') enacted December 29, 1970 by the Senate and House of Representatives of the United States of America in Congress assembled, Contractor [Roland Pugh Construction Company] —
 "(1) shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees;
 "(2) shall comply with occupational safety and health standards promulgated under the Act;
 "(3) shall comply with occupational safety and health standards and all rules, regulations and orders issued pursuant to the Act which are applicable to the Contractor's own actions and conduct."
The quoted provisions of the contract between Alabama Gas and Roland Pugh Construction expressly provide that: (1) Roland Pugh Construction was an "independent contractor" under its contract with Alabama Gas; (2) Alabama Gas did not retain the right to dictate the manner in which Roland Pugh Construction would perform its duties under the contract, and (3) Roland Pugh Construction, not Alabama Gas, was required to provide a safe working environment for its employees and was required to abide by all applicable OSHA rules during the performance of its duties under the contract.
Despite the presence of express provisions in a contract such as those set out above, this Court has stated in a number of cases that the parties' characterization of their relationship is not controlling; it is the actual behavior of the parties that determines the true character of their relationship. SeeAlabama Power Co. v. Beam, 472 So.2d 619 (Ala. 1985); NationalSec. Fire Cas. Co. v. Bowen, 447 So.2d 133 (Ala. 1983); SemoAviation, Inc. v. Southeastern Airways, 360 So.2d 936 (Ala. 1978). Under the rule of those cases, the real test to apply in order to ascertain whether Roland Pugh Construction was a subcontractor or was an independent contractor of Alabama Gas is whether Alabama Gas, through its inspector, Austin Smith, controlled the manner in which Roland Pugh Construction performed its duties under the contract. See Fuller v. Tractor Equipment Co., 545 So.2d 757 (Ala. 1989); Pugh v. ButlerTelephone Co., 512 So.2d 1317 (Ala. 1987); Sessions Co. v.Turner, 493 So.2d 1387 (Ala. 1986). In our opinion, the record clearly shows that Alabama Gas did not, through the actions of its inspector, Austin Smith, retain any control over the manner in which Roland Pugh Construction could perform its duties under the contract. In his deposition, which was read into evidence during the trial, Vernon Sauls, a sideboom operator who was working for Roland Pugh Construction, and who was nearby at the time of the accident, testified to the following concerning Austin Smith's alleged supervision of the job site:
 "Q. On that job, did you ever receive any instructions concerning your work from either Austin Smith or Kevin Gush [job site inspectors with Alabama Gas]?
"A. No.
"Q. Did they ever tell you how to do your job?
"A. No."
Randy Tanksley testified, regarding Austin Smith's alleged supervision of the job site, as follows:
"Q. Mr. Tanksley, who was your boss on this job?
"A. My foreman was Billy Gilmore.
 "Q. Yes, sir. Did you take your instructions on this job from Billy Gilmore?
"A. Yes, I did.
 "Q. Did Austin Smith ever give you any instructions about how to do your work out there?
"A. Not to my knowledge.
 "Q. Did Austin Smith ever give you any safety instructions on that job? *Page 737 
"A. No, sir.
 "Q. Did Austin Smith ever hold safety meetings out there for you and other members of the crew while you were out there?
"A. No, sir, not with me.
 "Q. Did Austin Smith ever come out and tell the crew how to do any of the work out there?
"A. I'm not sure.
"Q. To your knowledge, did he?
"A. I know he was there; I don't know.
 "Q. Yes, sir. But in your presence, did Austin Smith ever come out to you and your crew and give you any job instructions about how to do the work?
"A. To me personally?
"Q. Yes, sir.
"A. No, sir."
Finally, Laury Weaver, who was then a compliance officer working for OSHA and who was assigned to investigate the accident involving Randy and Travis Tanksley, testified concerning the responsibility for reinforcing the walls of the ditch before the Tanksleys' descent into the ditch:
 "Q. John Vineyard was the superintendent for Roland Pugh Construction?
"A. Yes.
 "Q. And Mr. Vineyard told you that the OSHA standard requirements were not considered as to this ditch, didn't he? Didn't he, Mr. Weaver?
 "A. He made the decision not to shore [reinforce the dirt walls].
"Q. All right. He told you that —
"A. They were — they have to be considered.
 "Q. All right. And John Vineyard told you that he was the man who made the decision not to shore?
 "A. He took it on himself to put those people [Randy and Travis Tanksley] in that hazardous condition, yes."
In light of the foregoing testimony, it is clear to this Court, as it was to the trial judge, that Austin Smith did not exercise any control over the manner in which Roland Pugh Construction performed its duties under the contract. Therefore, the trial court did not err in ruling that, as a matter of law, the evidence presented during the trial did not establish the existence of a prime contractor/subcontractor relationship between Alabama Gas and Roland Pugh Construction. Under the facts presented, the only conclusion that the trial court, or the jury, could reach was that Roland Pugh Construction's relationship with Alabama Gas was that of an "independent contractor."
Our review of the evidence presented clearly convinces us that the trial court did not err in ruling that, as a matter of law, the plaintiffs failed to establish the existence of a prime contractor/subcontractor relationship between Alabama Gas and Roland Pugh Construction.
Even though we hold that the trial court did not err in its ruling that Alabama Gas was not a "prime contractor," we note that a separate issue, and one tried by the plaintiffs, was whether Alabama Gas had somehow assumed a safety responsibility for the employees of Roland Pugh Construction. This issue was allowed to go to the jury for their consideration, and the jury found in favor of the defendants. In view of this, even assuming that the trial court erred in refusing to permit the expert to be questioned concerning the applicability of OSHA to Alabama Gas, plaintiffs were allowed to present their theory to the jury, the jury was properly charged on this theory of liability, and plaintiffs received an adverse determination; therefore, they cannot now complain that they were substantially prejudiced by the ruling of the trial court. Rule 45, A.R.App.P. The trial court's instructions to the jury correctly set forth the applicable law in this case.
In light of the instruction given to the jury, and the evidence presented before it during the trial, this Court cannot say that the jury's verdicts returned in favor of the defendants were "plainly and palpably" wrong. The verdicts were supported by the evidence.
We find no merit in the other issue raised by the appellants regarding the *Page 738 
court's refusal to permit the plaintiffs to introduce into evidence an article entitled Failures Resulting From Excavation— Their Causes and Prevention, by George F. Sowers.
For the foregoing reasons, the judgments of the trial court are due to be, and they hereby are, affirmed.
88-1528 AFFIRMED.
88-1529 AFFIRMED.
HORNSBY, C.J., and ADAMS, HOUSTON, STEAGALL and KENNEDY, JJ., concur.
[1] The ditch was 8 feet wide and varied between 13 and 17 feet deep.
[2] 29 C.F.R. § 1926.169 (1989), which speaks to the duty that exists between a prime contractor and its subcontractor to abide by OSHA rules, reads, in part, as follows:
"§ 1926.169 Rules of Construction.
 "(c) To the extent that a subcontractor of any tier agrees to perform any part of the contract, he also assumes responsibility for complying with the standards in this part with respect to that part. Thus, the prime contractor assumes the entire responsibility under the contract and the subcontractor assumes responsibility with respect to his portion of the work. With respect to subcontracted work, the prime contractor and any subcontractor or subcontractors shall be deemed to have joint responsibility.
 "(d) Where joint responsibility exists, both the prime contractor and his subcontractor or subcontractors, regardless of tier, shall be considered subject to the enforcement provisions of the Act." (Emphasis added.)
See Pate v. United States Steel Corp., 393 So.2d 992, 994 (Ala. 1981), in which this Court stated that a "prime contractor has the duty of providing the employees of its subcontractors a safe place to work."
[3] The specific federal statute that mandates that an employer shall provide its employees with a safe working environment is29 U.S.C. § 654, which reads as follows:
"§ 654. Duties of employers and employees
"(a) Each employer —
 "(1) shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees;
 "(2) shall comply with occupational safety and health standards promulgated under this chapter.
"(b) Each employee shall comply with occupational safety and health standards and all rules, regulations, and orders issued pursuant to this chapter which are applicable to his own actions and conduct."
[4] The ruling of the trial court came when plaintiffs' attorney was questioning their expert concerning the applicability of OSHA to Alabama Gas as the prime contractor. During the colloquy between the court and counsel, plaintiffs' counsel contended that "[t]here's certainly evidence of [a prime contractor/subcontractor relationship]. . . . They had four different subcontractors out there doing different legs of the work. . . . They were the prime . . . [a]nd it's on the record." When the trial court asked plaintiffs' counsel what he based his contention on, counsel replied, "I think the contract and everything else creates an owner prime contractor sub situation."