770 So.2d 63 (2000)
Tonda DICKERSON
v.
Sandra DENO et al.
Ex parte Tonda Dickerson.
Re Sandra Deno et al.
v.
Tonda Dickerson et al.
1981392 and 1981393.
Supreme Court of Alabama.
February 18, 2000.
Rehearing Denied April 28, 2000.
Charles R. Driggars and Gary B. Holder of Sirote & Permutt, P.C., Birmingham, for appellant/petitioner Tonda Dickerson.
Stephen E. Clements of Clute & Clements, P.C., Mobile; and Tristan R. Armer of Law Offices of Anna M. Williams, Grand Bay, for appellees/respondents Sandra Deno, Angie Tisdale, Matthew Adams, and Jackie Fairley.
MADDOX, Justice.
The parties to these proceedings dispute whether the holder of a winning Florida lottery ticket must share the winnings with others because of an alleged prior oral *64 agreement they all had made to share the winnings if any one of them was a winner. The trial court held that the one had to share the winnings with the others. The resolution of that question raises at least two legal questions:
(1) Given the evidence presented, did the trial judge err in finding that the holder of the winning lottery ticket had orally agreed to share any winnings equally with four other persons?
(2) Assuming, arguendo, that the proof was sufficient to establish an oral agreement, was the agreement unenforceable on the basis that it was a contract made in Alabama and was "founded ... on a gambling consideration," as that term is used in Ala.Code 1975, § 8-1-150?
We conclude that the agreement constituted a contract "founded ... on a gambling consideration" and, therefore, that it was unenforceable; consequently, we reverse the judgment of the trial court and render a judgment for the defendant Tonda Dickerson.
The facts are basically undisputed. The plaintiffsSandra Deno, Angie Tisdale, Matthew Adams, and Jackie Fairleyand the defendant Tonda Dickerson were all employees at the Waffle House restaurant in Grand Bay, Alabama. Edward Seward, who is not a party to this action, was a regular customer of the Waffle House. On several occasions Seward would travel to Florida and purchase lottery tickets and upon his return would give the tickets to various friends and family members, including the employees of the Waffle House. Seward did not expect to share any potential lottery winnings based on the tickets he gave away, but he claimed that he was promised a new truck by the employees of the Waffle House if one of the tickets he distributed there was a winning ticket. Several employees of the Waffle House received lottery tickets from Seward during the several weeks that he gave out the tickets.
A drawing for the Florida lottery was scheduled for Saturday night, March 6, 1999. During the week before that drawing, Seward traveled to Florida and purchased several lottery tickets. He placed each individual ticket in a separate envelope and wrote the name of the intended recipient on the outside of the envelope. On March 6, 1999, before the lottery drawing, Seward presented the plaintiffs Deno, Tisdale, and Adams each with an envelope containing one lottery ticket. The drawing was held as scheduled. The numbers on the lottery tickets held by Deno, Tisdale, and Adams did not match the numbers drawn in the March 6 drawing.
On March 7, 1999, after the March 6 drawing had already been concluded and the winning numbers had been determined, Seward presented a ticket to the plaintiff Fairley, who had never previously received a ticket from Seward; he also on that date presented the defendant Dickerson with a ticket. Each of those tickets was for the March 6 drawing, and each was presented in a separate envelope. Upon opening her envelope, Fairley determined that the numbers on her ticket did not match the winning numbers. Subsequently, Dickerson opened her envelope and determined that the numbers on her ticket matched the winning numbers drawn in the lottery the night before. The ticket won a prize of approximately $5 million.[1]
Shortly thereafter, on March 18, 1999, the plaintiffs sued Dickerson, alleging that they and Dickerson had orally contracted with each other that if any one of them should win, then the winner would share any lottery winnings with the other ticket recipients. The plaintiffs asked the court to issue a preliminary injunction enjoining distribution of the winnings until a declaration of their rights could be made, and on March 19, 1999, the trial court ordered all *65 parties to refrain from any further efforts or attempts to collect any funds from the State of Florida Department of Lottery that were, or might be, the subject of a dispute between the parties. This order remained in effect throughout the trial of the case. The plaintiffs sought to have the alleged oral agreement specifically performed, and they also asked the trial court to declare that a constructive trust had been created by the parties.
Dickerson filed a motion to dismiss the complaint, with an accompanying brief, and she later filed an answer. In the motion and in the answer, she alleged that enforcement of any oral agreement would be barred by the Statute of Frauds. She also averred that any oral agreement made by the parties was a gambling contract and could not be enforced under Alabama law.
The trial court refused to dismiss the complaint. Instead, it ordered that the case be tried before an advisory jury on the plaintiffs' claim for declaratory relief. Following the trial, the advisory jury returned a verdict for the plaintiffs, and the trial court entered a final judgment in the plaintiffs' favor. It issued a written order holding that there was an oral contract and that each party was entitled to 20% of the proceeds of Dickerson's Florida lottery ticket. Dickerson appeals.
Dickerson argues on appeal that the alleged oral agreement testified to by the plaintiffs was unenforceable because, she says, it lacked the necessary elements of a valid and enforceable contract. She also argues that, assuming, arguendo, that the alleged oral agreement did have all the elements ordinarily necessary for a contract, it was void as a gambling contract, because, she argues, it was an agreement made in Alabama and § 8-1-150 specifically provides that "[a]ll contracts founded in whole or in part on a gambling consideration are void."
The plaintiffs make several arguments, including: (1) that this Court must apply the ore tenus rule of review because much of the testimony was presented orally to the trial court, and that under that rule the trial court's findings of fact are presumed to be correct; (2) that Dickerson waived her defenses based on the proposition that the contract was unenforceable, because she did not raise those defenses in the trial court; and (3) that other jurisdictions have held that agreements to share lottery winnings are enforceable and do not violate public policy.
We have examined the plaintiffs' arguments and have thoroughly reviewed the record. However, we agree with Dickerson that she presented to the trial court each of the issues that she argues on appeal.
Dickerson argues at some length that the plaintiffs failed to prove that the parties made an oral agreement. However, we conclude that the parties presented sufficient evidence to support a finding that the parties did orally agree that if any one of them should win the lottery, then they all would divide the proceeds. But, assuming they entered into such an agreement, was that agreement void and unenforceable as a "contract[] founded ... on a gambling consideration"? See Ala.Code 1975, § 8-1-150. We now address the parties' arguments on that question.
The plaintiffs concede that § 8-1-150 seeks to prohibit the enforcement of any payment for actual wagering or gambling, or on games of chance, but they argue that the oral agreement in this case is not void, because, the contend, "[a]n agreement to share proceeds from a legal winning lottery ticket is simply not a wager between the parties to the agreement in the State of Alabama." They cite several cases they contend support their argument that the oral agreement made in this case was not founded on a gambling consideration. They first cite Talley v. Mathis, 265 Ga. 179, 453 S.E.2d 704 (1995), as being a "strikingly similar case." In that case, the complaint alleged that two friends, both residents of Georgia, had agreed to jointly purchase tickets from the State of Kentucky *66 lottery and to share the proceeds if they won. Mathis made the same argument in that case that Dickerson makes here: that the alleged agreement was against the public policy of the State where it was made and therefore was unenforceable. The Georgia Supreme Court, as the plaintiffs correctly argue, not only held that the alleged agreement would not violate Georgia public policy but stated that "the public policy of this state would be violated if appellant were denied the opportunity to seek to enforce the alleged agreement against appellees." 265 Ga. at 181, 453 S.E.2d at 706. The plaintiffs also argue that the facts of Talley are similar to the facts in Gipson v. Knard, 96 Ala. 419, 11 So. 482 (1892), because in both cases the parties were joint owners of out-of-state lottery tickets.
In further support of their argument for the validity of the oral agreement, the plaintiffs cite Pearsall v. Alexander, 572 A.2d 113 (D.C.1990), which the District of Columbia Court of Appeals described as "the story of two friends who split the price of a lottery ticket only to have the ticket win and split their friendship." 572 A.2d at 114. In Pearsall, the court held that the agreement did not constitute a gambling contract.
The plaintiffs also cite Kaszuba v. Zientara, 506 N.E.2d 1 (Ind.1987); Miller v. Radikopf, 394 Mich. 83, 228 N.W.2d 386 (1975); Pineiro v. Nieves, 108 N.J.Super. 51, 259 A.2d 920 (1969); Campbell v. Campbell, 213 A.D.2d 1027, 624 N.Y.S.2d 493 (1995); Stepp v. Freeman, 119 Ohio App.3d 68, 694 N.E.2d 510 (1997); Welford v. Nobrega, 411 Mass. 798, 586 N.E.2d 970 (1992), and Fitchie v. Yurko, 212 Ill.App.3d 216, 570 N.E.2d 892, 156 Ill.Dec. 416 (1991).
Dickerson answers the plaintiffs' argument by contending that "[e]very case cited by plaintiffs in support of their argument involves, unlike the instant case, the issue of whether jointly purchased and jointly held lottery tickets are enforceable." Dickerson says that "[t]he parties in those cases did not attempt to increase their odds of winning the foreign lottery by entering into a separate contract with each other" and that "the cases cited by plaintiffs generally hold that individuals may cross state lines and jointly purchase a lottery ticket in a state where such lotteries are legal, and the parties may enforce their rights in the jointly owned ticket," but, she says, "[that] fact situation is not present in this case." Dickerson further points out that in the cases cited by the plaintiffs the courts relied heavily on the fact that the parties did not gamble among themselves, but, rather, jointly gambled with a foreign lottery. Dickerson notes that in Talley the court specifically pointed out that the complaint alleged that "the ticket was legally purchased with joint funds in Kentucky," 265 Ga. at 180, 453 S.E.2d at 705, and that in Gipson v. Knard the transaction alleged was a joint purchase of lottery tickets in New Orleans.
In her concluding argument, Dickerson says:
"Every single case cited by Plaintiffs on the gambling issue, without exception, is a case in which the parties were joint owners of lottery tickets, even as Plaintiffs concede that the parties to this suit were not joint owners of the tickets, but were instead owners of individual tickets. Plaintiffs could only be entitled to a share of the winning tickets by virtue of their alleged side agreement with each other to hedge their bets, made in Alabama, not as a result of an ownership interest in the winning ticket."
We agree with Dickerson that the facts in this case show that there was no agreement to jointly purchase or to jointly hold the lottery tickets. Each lottery ticket was purchased by Seward in Florida and was presented by him to one or the other of the parties, separately. The alleged oral contract in this case was an exchange of promises to share winnings from the parties' individually owned lottery tickets upon the happening of the uncertain event that the numbers drawn in the Florida *67 lottery matched the numbers on one of the tickets held by the five individuals. Consequently, the agreement between the parties was nothing more than an attempt by each of the five lottery-ticket holders to increase his or her odds of winning some portion of the Florida lottery. Stated differently, the agreement, according to the plaintiffs' own evidence, was that Dickerson would pay the plaintiffs a sum of money upon the happening of an uncertain event over which no party had control, that is, upon Dickerson's ticket winning the Florida lottery. Consequently, we conclude that the agreement at issue here was "founded ... on a gambling consideration," within the meaning of that phrase in § 8-1-150 and that it was, therefore, void.
The judgment of the trial court is due to be reversed and a judgment rendered for the defendant Dickerson. Because of the judgment we enter on the appeal, the issue Dickerson raised in her petition for the writ of mandamus is moot.[2]
1981392 (the appeal)REVERSED AND JUDGMENT RENDERED.
1981393 (the mandamus petition) DISMISSED AS MOOT.
HOUSTON, SEE, LYONS, and BROWN, JJ., concur.
JOHNSTONE and ENGLAND, JJ., dissent.
JOHNSTONE, Justice (dissenting).
I respectfully dissent. The substance of the agreement among the parties is that each agreed that the lottery ticket held by him or her was jointly owned by all the parties. The consideration to each of the parties for his or her agreement in this regard consists of the mutual agreements to the same effect made by all of the other parties. That is, each party received the acknowledgment of each other party that such other's ticket was jointly owned by all the parties. The consideration consisted not of the uncertain event (the lottery) or the possible winnings from the lottery but rather of the mutual agreements among the parties. Likewise, none of the parties agreed to pay money upon the happening of the uncertain event; but, rather each agreed to acknowledge the joint ownership of his or her ticket by all the parties regardless of the happening of the uncertain event.
Thus the agreement, or contract, at issue is not "founded in whole or in part on a gambling consideration" as outlawed by § 8-1-150, Ala.Code 1975. Accordingly, the judgment of the trial court should be affirmed.
ENGLAND, J., concurs.
NOTES
[1] The total prize awarded for the March 6, 1999, Florida lottery was $10 million. However, two winning tickets were presented for that award.
[2] In Dickerson's mandamus petition, filed in this Court on May 28, 1999, she raised only one issue: Whether postjudgment interest, in an amount equal to approximately $1,300 per day, should have been accruing against her.