844 So.2d 1207 (2002)
Edward L. SEWARD, Jr.
v.
Tonda DICKERSON et al.
Tonda Dickerson et al.
v.
Edward L. Seward, Jr.
1011359 and 1011447.
Supreme Court of Alabama.
September 20, 2002.
*1208 Stephen E. Clements, Mobile; and Tristan R. Armer of Williams & Armer, P.C., Grand Bay, for appellant/cross-appellee Edward L. Seward, Jr.
William E. Pipkin, Jr., and Michael E. Gabel of Sirote & Permutt, P.C., Mobile, for appellees/cross-appellants Tonda Dickerson et al.
HOUSTON, Justice.
In Dickerson v. Deno, 770 So.2d 63 (Ala. 2000), we held that an agreement between Tonda Dickerson and her former co-employees to split the proceeds of a winning Florida lottery ticket was void under Alabama law. Edward Seward now challenges the validity of his gift of the ticket to Dickerson. The Mobile Circuit Court, in entering a summary judgment for Dickerson and the other defendants, rejected Seward's challenge. We affirm.
The underlying facts of this case were summarized in Dickerson as follows:
"The plaintiffs [in Dickerson ]Sandra Deno, Angie Tisdale, Matthew Adams, and Jackie Fairleyand ... Tonda Dickerson were all employees at the Waffle House restaurant in Grand Bay, Alabama. Edward Seward ... was a *1209 regular customer of the Waffle House. On several occasions Seward would travel to Florida and purchase lottery tickets and upon his return would give the tickets to various friends and family members, including the employees of the Waffle House. Seward did not expect to share any potential lottery winnings based on the tickets he gave away, but he claimed that he was promised a new truck by the employees of the Waffle House if one of the tickets he distributed there was a winning ticket. Several employees of the Waffle House received lottery tickets from Seward during the several weeks that he gave out the tickets.
"A drawing for the Florida lottery was scheduled for Saturday night, March 6, 1999. During the week before that drawing, Seward traveled to Florida and purchased several lottery tickets. He placed each individual ticket in a separate envelope and wrote the name of the intended recipient on the outside of the envelope. On March 6, 1999, before the lottery drawing, Seward presented... Deno, Tisdale, and Adams each with an envelope containing one lottery ticket. The drawing was held as scheduled. The numbers on the lottery tickets held by Deno, Tisdale, and Adams did not match the numbers drawn in the March 6 drawing.
"On March 7, 1999, after the March 6 drawing had already been concluded and the winning numbers had been determined, Seward presented a ticket to ... Fairley, who had never previously received a ticket from Seward; he also on that date presented ... Dickerson with a ticket. Each of those tickets was for the March 6 drawing, and each was presented in a separate envelope. Upon opening her envelope, Fairley determined that the numbers on her ticket did not match the winning numbers. Subsequently, Dickerson opened her envelope and determined that the numbers on her ticket matched the winning numbers drawn in the lottery the night before. The ticket won [Dickerson] a prize of approximately [$10] million."[1]
Dickerson, 770 So.2d at 64.
In Dickerson we held that there was sufficient evidence to support a finding that Dickerson and her co-employees orally agreed to split the proceedings should any of the tickets they received from Seward prove to be a winning ticket. Id. at 65. However, we also held that such an agreement was void and unenforceable under Ala.Code 1975, § 8-1-150, as a "contract[] founded ... on a gambling consideration." Id. at 65-67.
After we released our opinion in Dickerson, Seward sued Dickerson and others[2] (hereinafter referred to collectively as "the defendants"), alleging fraud and conversion and seeking equitable relief. The basis for each of these claims is Seward's allegation that Dickerson acquired the ticket from Seward by fraudulently misrepresenting that, if she won, she would share any winnings with her co-employees. The Mobile Circuit Court entered a summary judgment in favor of the *1210 defendants as to each of Seward's claims.[3]
"When reviewing a ruling on a motion for a summary judgment, this Court applies the same standard that the trial court used `in determining whether the evidence before the court made out a genuine issue of material fact.' Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala.1988). When a party moving for a summary judgment makes a prima facie showing that there is no genuine issue of material fact and that the movant is entitled to a judgment as a matter of law, the burden shifts to the nonmovant to present substantial evidence creating a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989). `Substantial evidence' is `evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved. West v. Founders Life Assur. Co. of Florida, 547 So.2d 870, 871 (Ala.1989). In reviewing a ruling on a motion for a summary judgment, this Court views the evidence in the light most favorable to the nonmovant and entertains such reasonable inferences as the jury would have been free to draw. Renfro v. Georgia Power Co., 604 So.2d 408, 411 (Ala.1992)."
City of Orange Beach v. Duggan, 788 So.2d 146, 149 (Ala.2000).
The defendants properly supported their motion for a summary judgment with evidence showing that Dickerson never made any misrepresentations to Seward regarding the lottery ticket before Seward gave her the lottery ticket; that Seward decided to give the lottery ticket to Dickerson without ever having discussed with Dickerson the issue of what would happen if the lottery ticket he gave her was the winning ticket; that Dickerson never asked Seward to give her a lottery ticket; that Seward never intended or expected that he was to receive any money should the lottery ticket he gave Dickerson turn out to be the winning ticket; and that the damages Seward sought to recover from Dickerson were the $10 million she received from the winning lottery ticket, not a "new truck." The defendants met their burden of showing that there was no genuine issue of material fact as to Seward's claims of fraud or conversion or his claim seeking equitable relief.
Therefore, in order for Seward to survive a summary judgment, he must present substantial evidence creating a genuine issue of material fact as to fraud or conversion on the part of Dickerson, or substantial evidence indicating that Seward was entitled to equitable relief. As stated above, Seward's claims alleging conversion and seeking equitable relief have as their foundations Seward's fraud claim. An essential element of any fraud claim is "reasonable reliance." See Reynolds Metals Co. v. Hill, 825 So.2d 100, 105 (Ala. 2002). Seward must have "reasonably relied" on Dickerson's alleged representation that she would split with her co-employees any winnings she received from her lottery ticket. However, the evidence indicates that the only "representation" Dickerson made was not made to Seward; rather, Seward attempts to rely on Dickerson's mere assent to a question asked to her by *1211 one of her coworkers, Sandra Deno, which he overheard:
"Q. I need to know whether you ever talked directly to Tonda Dickerson, and told her that you expected her to share anything she won from the lottery tickets that you were giving her?
"A. Let me seeThat Sunday?
"Q. Anytime.
"A. That Sunday, it would be two weeks ago?
"Q. Anytime.
"A. Anytime, yeah, yeah.
"Q. You looked at Tonda, and you said, I expect you to share?
"A. No, no, I didn't say nothing. Tonda toldTondaandme and TondaTondaSandra and Tonda and me will split it down the middle, down the middlelottery.
"Q. Okay.
"A. Down the middle.
"Q. And that's what Sandra told you?
"A. Yeah, about bothboth of us. And Sandra and Tonda, both of us.
"....
"Q. My question to you wasYou just told me about one specific conversation where you heard Sandra
"A. Uh-huh. (Witness indicates affirmatively.)
"Q. and Tonda talking?
"A. And me.
"Q. You were there?
"A. Yeah.
"Q. They weren't talking to you, were they?
"A. No, but JackieSandra, Tonda and me was talking towe were talking to each other.
"Q. But if I understand the conversation that you told me about, Sandra asked Tonda a question, right?
"A. What, now?
"Q. Sandra
"A. Sandra?
"Q. asked Tonda
"A. Yeah.
"Q. a question about the pool?
"A. Yeah.
"Q. And Tonda said, yes.
"A. Yeah.
"Q. She wasn't talking to you, was she? You were just there listening, right?
"A. About a three-waythree-way conversation.
"....
"Q. Okay. You don't remember asking any questions about lottery tickets during that conversation, do you?
"A. Lottery tickets, yeah.
"Q. Then, tell me what you said.
"A. All I heard was, down the middle, right, yeah.
"Q. That's what you heard, right?
"A. Yeah that's what I heard.
"Q. Okay.
"A. Heard, heard.
"Q. Right.
"A. Yeah.
"Q. But you didn't say anything about lottery tickets during that conversation, did you?
"A. Well, no, no."
Seward cannot reasonably rely on Dickerson's mere assenta fragment of a vague conversation that was not directed to himas the basis for the rather serious charge that Dickerson somehow "defrauded" him.[4]
*1212 Furthermore, the lack of the reasonableness of his reliance combines with the lack of evidence indicating that Dickerson intended to communicate with Seward in such a way as to induce him to purchase the ticket. In such a situation, where a "third-party" fraudulent misrepresentation is alleged, statements to persons other than the plaintiff will support the fraud allegations only when there is sufficient evidence of an intent on the part of the speaker to communicate to the third party in such a way as to induce the plaintiff to act. Thomas v. Halstead, 605 So.2d 1181, 1184-85 (Ala.1992). Seward's testimony indicates (1) that there was only one relevant conversation; (2) that this conversation was not directed at Seward; (3) that Dickerson did not initiate and was not directing the conversation; and (4) that Dickerson's responsesomething along the lines of "yes," "yeah," or "that's right"was her sole contribution to the conversation. Not only is reliance upon Dickerson's "statement" not sufficiently reasonable to support Seward's fraud claim, but the circumstances surrounding Dickerson's statement do not adequately demonstrate an intent to communicate to Seward or to induce Seward to act. The trial court did not err when it entered a summary judgment on Seward's fraud claim.
Additionally, as stated above, Seward's conversion claim and his claim for equitable relief rely upon the validity of his fraud claim. Therefore, we hold that the trial court did not err in entering a summary judgment for the defendants as to those claims.
The defendants filed a cross-appeal, arguing that the trial court erred in entering a partial summary judgment in favor of Seward on the issue of the existence of the agreement among Dickerson and her co-employees to divide any lottery winnings. However, our affirmance of the trial court's summary judgment in favor of the defendants renders their cross-appeal moot.
1011359AFFIRMED.
MOORE, C.J., and LYONS and WOODALL, JJ., concur.
JOHNSTONE, J., concurs specially.
1011447APPEAL DISMISSED AS MOOT.
MOORE, C.J., and LYONS, JOHNSTONE, and WOODALL, JJ., concur.
JOHNSTONE, Justice (concurring specially).
I concur, except that I do not agree with the statement in footnote 4 to the effect that an agreement among Dickerson and her coworkers to divide any proceeds from the ticket would be void under Alabama law. While the statement faithfully follows the holding of Dickerson v. Deno, 770 So.2d 63 (Ala.2000), I respectfully maintain the disagreement that I expressed in my dissent in that case, 770 So.2d at 67.
NOTES
[1] We noted in Dickerson that the total prize for the March 6, 1999, Florida lottery was $10 million and was split between two winning tickets. 770 So.2d at 64 n. 1. However, it appears that the total winnings were $20 million, and that each of the two winners was awarded $10 million.
[2] The other defendants include a corporation formed by Dickerson after she won the lottery and several shareholders of that corporation.
[3] Seward argues that the trial court erroneously construed the fraudulent misrepresentation alleged in Seward's complaint to be Dickerson and her co-employees' alleged promise to buy him a truck if one of the tickets he gave them proved to be a winning ticket. Instead, Seward contends that his complaint is based upon Dickerson's alleged misrepresentation that she would split the winnings with her co-employees. We agree, and we focus our analysis upon this contention.
[4] Although not dispositive, the fact that the statement Seward relied upon was an apparent assent to enter into an agreement that is void under Alabama law can do nothing but reduce the reasonableness of Seward's reliance.