STUART, Justice.
 

 Manan Shah and Jankhana Shah sued Chandrakant Choksi in the Jackson Circuit Court after Choksi failed to fulfill the terms of a settlement agreement he had entered into with the Shahs that required him to pay them $800,000. After a trial, the jury returned a verdict in favor of the Shahs, awarding them $800,000. The trial
 
 *290
 
 court subsequently entered a judgment on that verdict, adding to the amount an additional $110,729 for prejudgment interest. We affirm.
 

 I.
 

 The defendant, Choksi, owns and leases multiple gasoline service stations and convenience stores in north Alabama and surrounding states. Sometime in 2000 or 2001, a mutual friend introduced Choksi to Manan Shah, and Choksi subsequently hired Manan to work at a gas station and convenience store in Madison. In November 2003, Choksi transferred Manan to a different gas station and convenience store in Scottsboro (hereinafter referred to as “The Pantry”). In May 2004, Manan entered into an agreement with Choksi pursuant to which Manan would lease The Pantry from Choksi and operate it. During this same period, Manan also operated another gas station in the same immediate area, Hi-Tech Fuel, which was not owned by Choksi.
 

 On occasion, Jankhana Shah, Manan’s wife, would work at The Pantry when Ma-nan had to leave to tend to Hi-Tech Fuel or to take care of other business. One day in October 2004, Jankhana was working at The Pantry when Choksi stopped by to collect the monthly lease payment. Jank-hana alleges that, while he was in the store, Choksi grabbed, touched, and attempted to kiss her. Jankhana did not tell Manan about Choksi’s behavior at that time; however, after Choksi behaved in a similar manner when he came to pick up the next month’s lease payment, Jankhana told Manan what had occurred.
 

 Manan thereafter purchased an audio-video recording surveillance system and, with the help of a friend Bipin Patel, who operated a gas station in Fort Payne and who was also a business associate of Chok-si’s, installed the recording system in the ceding of The Pantry. On December 26, 2004, Choksi went to The Pantry to collect the December lease payment. Choksi again attempted to hug, touch, and kiss Jankhana, at one point even trying to pull her into a closet. Unbeknownst to him, however, the recording system captured the entire episode on tape.
 

 On December 29, Manan contacted Choksi and told him he had a videotape of Choksi harassing his wife during his visit to The Pantry on December 26. Manan also told Choksi that he was terminating his lease of The Pantry and that Choksi should come and pick up the keys. Choksi subsequently traveled to The Pantry, and, once he arrived, Patel, who was also there, took him outside and showed him several still photographs that had been extracted from the videotape.
 
 [1]
 
 Choksi then agreed to let Manan terminate the lease but asked him to continue operating The Pantry until Choksi could find another tenant. Manan agreed to do so and continued operating The Pantry until January 15, 2005.
 

 On January 20, 2005, Manan and Choksi met at the office of the Alcoholic Beverage Control Board in Huntsville to transfer The Pantry’s permit to sell alcohol from Manan to Choksi. After doing so, Manan and Choksi had a conversation in Choksi’s automobile during which Choksi expressed concern about his family’s reaction to the incidents with Jankhana and offered to let Manan operate one of his gas stations and convenience stores for five years rent free. Their conversation ended, however, when Manan told Choksi that he had retained an attorney and that he was going to sue
 
 *291
 
 Choksi for $1 million. Feeling that he was being blackmailed, Choksi consulted an attorney the next day, who advised him to meet with the Alabama Bureau of Investigations (“ABI”)- Choksi subsequently met with an ABI investigator, as well as with representatives from the district attorney’s offices in both Jackson and De-Kalb Counties. Meanwhile, Choksi continued to negotiate with Manan, using Patel as an intermediary. Pursuant to instructions given him by the ABI, Choksi recorded many of the telephone calls between him and Patel.
 

 On Saturday, February 12, 2005, Choksi and Manan met at Patel’s gas station in Fort Payne to formalize an agreement Patel had helped them reach. That agreement was memorialized in two separate handwritten contracts, both witnessed by Patel.
 
 [2]
 
 The contract signed by Choksi reads as follows:
 

 “Confession Note
 

 “I, Chandrakant Choksi, resident of Huntsville, Alabama, aged 40 years, with God as my witness admit that I have insulted and hurt the self-respect of the wife of Mananbhai Shah, Jhankhana-ben,
 
 [3]
 
 aged 23 years, and her husband Mananbhai by taking inappropriate liberties with her body at their store at the Shell Gas Station in Scottsboro. They possess video cassettes and photographs as a proof for this crime. As a retribution for bodily and mental damage and insult and also to protect the honor of my family and myself from going to police or to court, I have agreed with my own free will and according to Hindu religion law, to pay Mananbhai and his wife Jhankhanaben $800,000 with the help of my friend Bipinbhai K. Patel as an intermediary which is agreed upon by me and Mananbhai and Jhankhanaben. As soon as Mananbhai and Jhankhana-ben receive the compensation for this crime by May 30, 2005; they will be required to return all the cassettes and photographs to Chandrakant Choksi.
 

 “After this contract, neither I, nor Mananbhai nor Jhankhanaben will have a right to file a case or sue for money or interfere in each other’s lives, which is agreed upon by me, Mananbhai and Jhankhanaben.”
 

 The contract signed by Manan provided as follows:
 

 “Contract
 

 “I, Manan Shah, and my wife, Jhank-hana Shah, today, with God and Bipin-bhai Patel, my friend, as witness, agree that according to the contract by Chan-drakantbhai Choksi, that after accepting $800,000 as retribution, we or our family [has] no right to go to court for money or to the police station and no right to slander Chandrakantbhai Choksi in the society or in the family. Also, as soon as we receive the compensation we will be required to return all videos, CDs, photographs to Chandrakantbhai.”
 

 After the contracts were completed, Chok-si gave Manan three postdated checks for $100,000, $50,000, and $50,000, as an initial payment.
 

 On Monday, February 14, 2005, Choksi stopped payment on the three checks. He also arranged another meeting for that date with Manan at Patel’s gas station.
 
 *292
 
 Choksi led ABI agents to that meeting, and the agents subsequently questioned Manan and Patel; however, there is no evidence in the record indicating that the ABI took any action concerning the dispute. Choksi thereafter refused to pay Manan the $800,000, and, on March 23, 2005, the Shahs sued Choksi and his business, Hartselle Food Mart, Inc., in the Jackson Circuit Court alleging that Choksi had breached the settlement contract by refusing to pay them $800,000. Choksi filed an answer claiming, among other things, that he had signed the settlement contract under duress after being threatened, intimidated, and coerced.
 

 On September 10, 2007, the Shahs’ case was called for a jury trial. Choksi and Hartselle Food Mart moved for a judgment as a matter of law at the conclusion of the Shahs’ case and at the close of all the evidence, but both motions were denied. On September 13, 2007, the jury returned a verdict in favor of the Shahs and against only Choksi for $800,000. The trial court entered a judgment on that verdict and subsequently added an additional $110,729 to the verdict for prejudgment interest. The Shahs subsequently moved the trial court to correct the judgment entered on the jury’s verdict to indicate that that judgment was against Hartselle Food Mart also. The trial court denied that motion. Choksi moved the trial court to alter, amend, or vacate its judgment or, in the alternative, to grant him a new trial; however, that motion was denied. On February 13, 2008, Choksi filed his notice of appeal with this Court. We then remanded the case to the trial court because of the outstanding claims against Hartselle Food Mart. On remand, the trial court dismissed those claims.
 

 II.
 

 “In discussing the standard of review in an appeal from a judgment based on a jury verdict where the trial court has denied a motion for a new trial, this Court has stated:
 

 “ ‘ “Jury verdicts are presumed correct, and this presumption is strengthened by the trial court’s denial of a motion for a new trial. Therefore, a judgment based on a jury verdict will not be reversed unless it is ‘plainly and palpably’ wrong.” ’
 

 “Tanksley v. Alabama Gas Corp.,
 
 568 So.2d 731, 734 (Ala.1990) (quoting
 
 Davis v. Ulin,
 
 545 So.2d 14, 15 (Ala.1989)).”
 

 Petty-Fitzmaurice v. Steen,
 
 871 So.2d 771, 773 (Ala.2003).
 

 III.
 

 Choksi raises four issues on appeal. First, he argues that the Shahs’ claims against him are barred by statute because they are, he claims, essentially alienation-of-affection claims. In
 
 Bailey v. Faulkner,
 
 940 So.2d 247 (Ala.2006), this Court recognized that § 6-5-331, Ala.Code 1975, which provides that “[t]here shall be no civil claims for alienation of affections, criminal conversation, or seduction of any female person of the age of 19 years or over,” abolished any claim for damages— no matter how those claims are denominated — based on allegations of interference with the marriage relationship. Choksi concludes that “[t]he claims asserted by one spouse against a third party who had become involved with the other spouse can only be classified as alienation of affection.” (Choksi’s brief, p. 25.)
 

 Although
 
 Bailey
 
 accurately states the law, Choksi’s argument nonetheless fails because the only “involvement” Jankhana had with Choksi was as an unwilling victim of his assault; no evidence was submitted indicating that she welcomed his advances or that she consented to his touching her. This case is not about an aggrieved husband suing his wife’s paramour, see, e.g.,
 
 *293
 

 Bailey
 
 and
 
 D.D. v. C.L.D.,
 
 600 So.2d 219 (Ala.1992); rather, it is about a husband and wife suing a third party who had assaulted the wife, who had preemptively agreed to settle to avoid legal action based on that assault, and who then allegedly had breached the terms of the settlement contract. Section 6-5-331 is irrelevant to such a case.
 

 Choksi’s next two arguments concern whether the settlement contract is enforceable. He first argues that the writings signed by him and Manan do not form an enforceable contract because, he claims, he agreed to the settlement only after he was threatened with criminal prosecution, a civil lawsuit, and public humiliation. Accordingly, he argues, the settlement was the product of blackmail or extortion. Blackmail and extortion are prohibited by law, and, he argues, as a matter of public policy, contracts that result from either blackmail or extortion should not be enforced. Choksi cites
 
 Dickerson v. Deno,
 
 770 So.2d 63 (Ala.2000), in support of his argument, a case in which this Court held that an alleged contract to share lottery winnings was unenforceable because it was, at its core, based on illegal gambling.
 
 [4]
 
 Choksi also argues that the settlement contract should not be enforced because he entered into it only after being threatened and while he was under great duress. See
 
 Tidwell v. Tidwell,
 
 505 So.2d 1236, 1238 (Ala.Civ.App.1987) (“Alabama recognizes that upon showing of duress or undue influence a party may be relieved of contractual obligations.”).
 

 We cannot say, however, that the settlement contract entered into by Choksi was the product of blackmail or extortion. The jury heard Choksi’s testimony that he signed the contract only because he felt threatened:
 

 “Q: Now, you eventually signed this document that has been marked as plaintiffs’ exhibit number three, which is written in Gujarati, is that correct?
 

 “A: Yes, I signed it under duress.
 

 “Q: Well, now, tell the ladies and gentlemen of the jury why you signed that document.
 

 “A: I had that telephone conversation where he threatened me about, ‘if you don’t come, I will bring your partners and all of your employees into court on my side and you will be alone in court and I will ruin you with your family and I will ruin your business and I will ruin you in society and your church,’ which we call temple, ‘and I will send these documents,’ you know, the pictures and the videotapes, ‘and I will send to the Gujarati Times,’ which is our Indian community newspaper, ‘and I will send it to them and I will publish that.’ And also he told me that, ‘if you don’t pay me, I will do it my way.’ And those words I recorded on tape and that word hurt my feelings and threatened me like I’ve never been threatened like that.”
 

 The jury heard this testimony, was charged by the trial court on the elements of the affirmative defense of duress, and, as evidenced by the verdict it returned, rejected it. Moreover,
 

 “ ‘[i]t is the well-settled general rule that it is not duress to institute or threaten to institute civil suits, or take proceedings in court, or for any person to declare that he intends to use the courts wherein to insist upon what he believes to be his legal rights. It is never duress to do that which a party has a legal right
 
 *294
 
 to do, and the fact that a threat was made of a resort to legal proceedings to collect a claim which was at least valid in part constitutes neither duress nor fraud such as will avoid liability on a compromise agreement.’ ”
 

 Neuberger v. Preferred Acc. Ins. Co. of New York,
 
 18 Ala.App. 72, 74, 89 So. 90, 92 (1921). Considering all the evidence adduced at trial, including the evidence indicating that Choksi was a sophisticated and educated businessman experienced in negotiating contracts, we cannot say that the verdict returned by the jury was plainly and palpably wrong.
 

 Choksi’s final argument is that the Shahs cannot sue him based on a breach of the settlement contract when they have breached that settlement contract themselves. See, e.g.,
 
 Southern Energy Homes, Inc. v. Gregor, 777
 
 So.2d 79, 82 (Ala.2000) (“A plaintiff cannot simultaneously claim the benefits of a contract and repudiate its burdens and conditions.”). In his brief to this Court, Choksi states:
 

 “The terms of the ‘settlement’ agreement stated that defendant Choksi would pay money to the [Shahs] and [the Shahs] in turn agreed that they would not disclose defendant Choksi’s actions nor disseminate the photographs of defendant Choksi’s acts to the public. [The Shahs’] trial testimony admitted that they repudiated the terms of this agreement with Choksi by making public disclosures of Choksi’s attempt to have sexual relations with Mrs. Shah by showing photographs of Choksi’s actions to numerous members of the public.”
 

 (Choksi’s brief, p. 32.)
 

 It is undisputed that Manan did discuss Choksi’s alleged assault of Jankha-na and that he did share photographs of that incident with other parties. However, contrary to Choksi’s assertion, that behavior did not violate the terms of the contract Manan signed. That contract provided only that “after accepting $800,000 as retribution, we or our family [has] no right to go to court for money or to the police station and no right to slander Chandra-kantbhai Choksi in the society or in the family.” Ignoring the fact that the Shahs never actually received $800,000, there is no evidence indicating that the Shahs in fact slandered Choksi. Manan may have showed the videotape and photographs extracted from the videotape to others; however, Choksi agreed at trial that “what is on the videotape is what occurred.” Slander is a form of defamation and “[t]ruth is an absolute defense to a defamation claim.”
 
 S.B. v. Saint James School,
 
 959 So.2d 72, 100 (Ala.2006) (citing
 
 Foley v. State Farm Fire & Cas. Ins. Co.,
 
 491 So.2d 934 (Ala.1986)).
 
 [5]
 
 There is no evidence indicating that the Shahs themselves breached the settlement contract.
 

 IV.
 

 The Shahs sued Choksi alleging breach of contract, and, after a jury trial, the jury returned a verdict in favor of the Shahs for $800,000. A judgment was subsequently entered on that verdict, and Choksi has failed to establish that that judgment was plainly and palpably wrong. Accordingly, that judgment is affirmed.
 

 AFFIRMED.
 

 COBB, C.J., and LYONS, BOLIN, and MURDOCK, JJ., concur.
 

 [1]
 

 . At trial, Manan and Choksi each testified that the other had invited Patel to the meeting.
 

 [2]
 

 . The contracts that were executed were written in the parties’ native language of Gujarati. The translations quoted here were provided by the defense, but Manan agreed at trial that the translations were correct in all material respects.
 

 [3]
 

 3. The suffixes “bhai” (men) and "ben” (women) are honorifics sometimes added to names in Gujarat culture.
 

 [4]
 

 . We note that our decision in
 
 Dickerson
 
 was based on § 8-1-150, Ala.Code 1975, which specifically provides that ''[a]ll contracts founded in whole or in part on a gambling consideration are void.”
 

 [5]
 

 . Choksi has not argued to this Court that the term "slander,” as it is used in the contract executed by Manan, means anything other than its ordinary legal definition as explained here, that is, it requires the communication of a
 
 false
 
 and defamatory statement.