The parties to these appeals are the Cadle Company ("Cadle") and Robert M. Ferguson, former president and chief executive officer of Power Equipment Company, Inc. ("PEC"). Cadle is an investment company that purchases loans from financial institutions. PEC was an equipment supply company that maintained its corporate accounts with First State Bank of Atmore, Alabama ("First State"). PEC declared bankruptcy and is no longer in business.
On February 19, 1987, the Superintendent of Banking for the State of Alabama declared First State insolvent, closed the bank, and appointed the Federal Deposit Insurance Corporation ("FDIC") as receiver of all of First State's assets. PEC's account was one of the assets acquired by the FDIC.
Cadle purchased PEC's account, which included four promissory notes signed by Ferguson on behalf of PEC and two guaranty agreements signed by Ferguson, from the FDIC. Cadle notified Ferguson that PEC's account had an outstanding principal balance of $235,873.63, as of October 25, 1989. Ferguson responded by stating that the notes had been paid in full.
Ferguson had signed four promissory notes, all of which designated PEC as the borrower, and which were dated June 20, 1984; August 24, 1984; February 22, 1985; and October 28, 1985. Those promissory notes were in the amounts of $325,008.00; $315,008.00; $287,920.10; and $387,395.40, respectively. Ferguson signed the1 first, third, and fourth promissory notes as "Power Equipment Co., Inc., Robert M. Ferguson, By: It's [sic] President." He signed the second note only as "Robert M. Ferguson Pr."
Cadle sued Ferguson, contending that Ferguson is personally liable for any outstanding debt on any of the promissory notes. At trial, Cadle sought damages in the amount of $235,873.63 in principal, $404,481.59 in interest through October 19, 1999, and $88.45 in interest per day from October 19, 1999, through the date of the judgment.
The evidence presented at trial indicated that the first three promissory notes were executed under the same loan number, 1421-26. The fourth promissory note was executed under a different loan number, 1421-118, but included a notation at the top of the note referencing loan number 1421-26. At trial, Cadle introduced the original commercial loan history card for loan number 1421-26, and Ferguson introduced a copy of the same loan history card. The loan history card for loan number 1421-26 indicates "note closed" and shows a balance of $0.00. Cadle introduced the original loan history card for loan number 1421-118, which showed a principal balance of $117,936.81, as of February 19, 1987. Ferguson maintained that the promissory notes had been paid in full, but that if there was any outstanding balance, he was not personally liable for it. The jury returned a verdict against Ferguson in the amount of $100,000. *Page 475 
Following the verdict, Cadle moved for a judgment as a matter of law, asserting that the undisputed evidence at trial was that the outstanding principal balance of $238,873.63 had not been paid. Ferguson filed a post-judgment motion, also asserting that the verdict was inconsistent with the evidence presented at trial. Both parties asserted that there was no evidence presented at trial from which the jury could reasonably have assessed damages of $100,000. The trial court denied both motions. Ferguson and Cadle filed appeals, which have been consolidated.
At trial and on appeal, Cadle has argued that Ferguson's signature on the second promissory note obligates Ferguson individually. However, in determining whether Ferguson is personally liable for any outstanding debt, it is not necessary to address that argument, because Ferguson personally signed two guaranty agreements, one of which covers all four promissory notes. On April 11, 1984, Ferguson signed the first guaranty agreement, which states, in pertinent part:
 "For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and to induce FIRST STATE BANK OF ATMORE (herein, with its participants, successors and assigns, called `Bank') at its option, at any time or from time to time to make loans or extend other accommodations to or for the account of POWER EQUIPMENT CO., INC. (herein called `Borrower') or to engage in any other transactions with Borrower, the undesigned hereby absolutely and unconditionally guarantee(s) to the Bank the full and prompt payment when due, whether at maturity or earlier by reason of acceleration or otherwise, of the debts, liabilities and obligations described as follows:
 "A. If this is checked, the under-signed guarantee(s) to Bank the payment and performance of each and every debt, liability and obligation of every type and description which Borrower may now or at any time hereafter owe to Bank (whether such debt, liability or obligation now exists or is hereafter created or incurred, and whether it is or may be direct or indirect, due or to become due, absolute or contingent, primary or secondary, liquidated or unliquidated, or joint, several or joint and several; all such debts, liabilities and obligations being hereinafter collectively referred to as the `Indebtedness').
 "B. If this is checked, the under-signed guarantee(s) to Bank the payment and performance of the debt, liability or obligation of Borrower to Bank evidenced by or arising out of the following:
 and any extensions, renewals or replace-ments thereof (hereinafter referred to as the `Indebtedness').
On the April 11, 1984, guaranty, the box in paragraph A is marked. Ferguson signed the guaranty as "Robert M. Ferguson." The guaranty does not in any way indicate that Ferguson meant to sign as an agent of PEC. Therefore, Ferguson is personally liable for the repayment of any debt covered by the guaranty agreement, which includes all four promissory notes, unless the guaranty has been revoked. See Bank v. Cannon,414 So.2d 926 (Ala. 1982).[1]
Ferguson argues that he signed another guaranty on February 28, 1985, that *Page 476 
was intended to replace the April 11, 1984, guaranty. The February 28, 1985, guaranty is identical to the April 11, 1984, guaranty, except that neither the box in paragraph A nor the box in paragraph B is marked. Without either box being marked, the signer is not obligated to do anything, and the guaranty does not guarantee anything.
Furthermore, the February 28, 1985, guaranty cannot, in and of itself, negate the earlier guaranty. Both guaranty agreements also state, in pertinent part:
 "1. No act or thing need occur to establish the liability of the undersigned hereunder, and no act or thing, except full payment and discharge of all indebtedness, shall in any way exonerate the undersigned or modify, reduce, limit or release the liability of the undersigned hereunder.
 "2. If paragraph A is checked, this is an absolute, unconditional and continuing guaranty of payment of the Indebtedness and shall continue to be in force and be binding upon the undersigned, whether or not all Indebtedness is paid in full, until this guaranty is revoked prospectively as to future transactions, by written notice actually received by the Bank, and such revocation shall not be effective as to Indebtedness existing or committed for at the time of actual receipt of such notice by the Bank, or as to any renewals, extensions and refinancing thereof. . . ."
(Emphasis added.)
On the April 11, 1984, guaranty, the box in paragraph A is marked. Therefore, the only way to revoke that guaranty is "by written notice actually received by the Bank." The record before this Court does not indicate any such written notice. Therefore, the April 11, 1984, guaranty remains in effect. Consequently, looking at the evidence in the light most favorable to Ferguson, we find that Ferguson is personally liable for any outstanding debt incurred by PEC.
The amount of any outstanding debt was strongly contested by both parties. Cadle testified that Ferguson is liable for $235,873.63 in principal, $404,481.59 in interest through October 19, 1999, and an additional $88.45 per day in interest from October 19, 1999, to the date of the judgment. Ferguson testified that all the promissory notes were paid in full, leaving no outstanding balance. The loan history card for loan number 1421-118 indicates an outstanding principal balance of $117,936.81. Thus, the testimony and exhibits presented at trial presented a genuine issue of fact for the jury to determine as to the amount, if any, owed by Ferguson. Therefore, the trial court correctly denied both Ferguson's and Cadle's motion for a judgment as a matter of law.
However, whether the jury believed Cadle, Ferguson, or the loan history card for loan number 1421-118, there was no evidence that would support an assessment of damages in the amount of $100,000. Thus,
 "Where, as here, the jury verdict cannot be justified upon any reasonable hypothesis presented by the evidence, it ought to be set aside upon proper proceedings as being the result of compromise or mistake, for neither the court nor jury have the right to arbitrate or compromise differences between the parties."
Donavan v. Fandrich, 265 Ala. 439, 440, 92 So.2d 1, 2 (1957). See alsoStinson v. Acme Propane Gas Co., 391 So.2d 659, 661 (Ala. 1980); Stonev. Echols, 351 So.2d 902, 903 (Ala. 1977).
This Court finds that there was no reasonable basis for the jury to assess damages in the amount of $100,000. Therefore, the trial court erred in failing to order a new trial. The judgment is reversed and the cause is remanded for *Page 477 
further proceedings consistent with this opinion.
 OPINION OF JUNE 29, 2001, WITHDRAWN; OPINION SUBSTITUTED; APPLICATION OVERRULED; REVERSED AND REMANDED.
Moore, C.J., and Houston, Lyons, and Johnstone, JJ., concur.
[1] The case published at 414 So.2d 926 has been indexed in SouthernReporter (Second Series) under the style Bank v. Cannon. It should have been indexed under the style Phenix Girard Bank v. Cannon.