William Petty-Fitzmaurice appeals the trial court's denial of his renewed motion for a judgment as a matter of law, or, in the alternative, for a new trial or a remittur. We reverse and remand for a new trial.
 Facts and Procedural History
On August 28, 2000, William Steen, while operating a Sea-Doo personal watercraft on Lake Jordan, was struck by another Sea-Doo personal watercraft operated by Petty-Fitzmaurice. The impact of Petty-Fitzmaurice's personal *Page 772 
watercraft severed Steen's right leg below the knee. On June 11, 2001, Steen sued Petty-Fitzmaurice on the grounds that he negligently or wantonly operated the personal watercraft that struck Steen; and Bombardier, Inc., and Bombardier Motor Corporation of America, the manufacturers of the Sea-Doo personal watercrafts; and Yamaha of Sylacauga, Inc., the seller of the personal watercrafts, on the grounds that they violated the Alabama Extended Manufacturer's Liability Doctrine ("the AEMLD") and that they were negligent in designing, testing, distributing, selling, and failing to recall the personal watercrafts in question, and in failing to provide adequate warnings.
This action was tried on October 28-30, 2002, and on November 4-7, 2002. Yamaha of Sylacauga, Inc., was dismissed from the action the first day of the trial, as was Steen's wantonness claim against Petty-Fitzmaurice. On November 6, 2002, Bombardier, Inc., and Bombardier Motor Corporation of America entered into a pro tanto settlement agreement with Steen. Consequently, Petty-Fitzmaurice was the only remaining defendant when the case was submitted to the jury. On November 8, 2002, the jury returned a verdict in favor of Steen and awarded him $3,430,000. The trial court entered a judgment in favor of Steen and reduced the damages award to $2,680,000, based on the pro tanto settlement agreement between Steen and Bombardier, Inc., and Bombardier Motor Corporation of America.
Petty-Fitzmaurice's counsel states that during its deliberations the jury had one or more questions for the trial court, which the trial court answered outside counsel's presence. Counsel contends that he learned of the alleged communications during a conversation with Steen's counsel, which occurred approximately 7 to 10 days after the judgment was entered by the trial court. Petty-Fitzmaurice's counsel states that he subsequently attempted to contact various members of the jury to determine whether the alleged communications between the jury and the trial court occurred. According to counsel's affidavit, he had a telephone conversation with a juror who told him that "the jury did ask the [trial] court at least one question[, which] was asked orally in the jury room and was answered by the [trial] court without leaving the jury room, without placing the response on the record, and without attempting to contact [Petty-Fitzmaurice's counsel]." Counsel's affidavit also states that Steen's counsel and the aforementioned juror told him that "at least one question related to whether the jury needed to apportion fault between [Petty-Fitzmaurice] and Bombardier, a settling defendant." Petty-Fitzmaurice's counsel asserts that Steen's attorney told him that the trial court told the jury that it "`did not need to worry about that, that he would apportion damages between the two defendants.'" Counsel further states in his affidavit that the juror with whom he spoke recalled that the trial court said that "`he would reduce the jury's award by the amount of the settlement entered into by Bombardier.'"
After learning about the alleged communications between the jury and the trial court during the jury's deliberations, Petty-Fitzmaurice filed a renewed motion for a judgment as a matter of law, and alternatively, for a new trial or a remittur. Petty-Fitzmaurice attached the affidavit of his counsel to his motion. Petty-Fitzmaurice requested, in the event the trial court denied his motion for a new trial, that the trial court conduct an evidentiary hearing in which the trial court and all jurors would provide testimony as to what questions the jury asked the trial court during its deliberations and how the questions were answered by the trial court. The trial court denied Petty-Fitzmaurice's motion without a hearing. On December 20, 2000, Petty-Fitzmaurice filed a motion asking the trial court to reconsider its *Page 773 
denial of the motion for a new trial, reiterating his arguments concerning the alleged communications between the jury and the trial court, and again requesting an evidentiary hearing on the matter. The trial court denied the motion without a hearing and without controverting any of the assertions in the affidavit as to its conduct. Petty-Fitzmaurice appealed.
 Standard of Review
In discussing the standard of review in an appeal from a judgment based on a jury verdict where the trial court has denied a motion for a new trial, this Court has stated:
 "`Jury verdicts are presumed correct, and this presumption is strengthened by the trial court's denial of a motion for a new trial. Therefore, a judgment based on a jury verdict will not be reversed unless it is "plainly and palpably" wrong.'"
Tanksley v. Alabama Gas Corp., 568 So.2d 731, 734 (Ala. 1990) (quotingDavis v. Ulin, 545 So.2d 14, 15 (Ala. 1989)).
 Analysis
Petty-Fitzmaurice argues that the trial court's communication with the jury, during its deliberations and without notifying Petty-Fitzmaurice's counsel, amounts to a "significant and new instruction to the jury," in violation of Alabama law. Petty-Fitzmaurice points us to Matthews v.Liberty Mutual Insurance Co., 286 Ala. 598, 243 So.2d 703 (1971), in support of his contention that the trial court's alleged communications with the jury warrant a new trial.
In Matthews, this Court considered whether the trial court erred when it communicated with the jury during deliberations and outside the presence of the parties and counsel. This Court recognized the general rule that a trial court may not instruct the jury, outside the presence of counsel and during deliberations, without making a reasonable effort to notify counsel unless circumstances existed that made notifying counsel unreasonable. This Court noted that they were "quite certain" that the trial judge in Matthews "intended no harm in entering the jury room and communicating with the jury out of the presence of the parties and counsel." Matthews, 286 Ala. at 605, 243 So.2d at 710. Despite the trial court's harmless motive, this Court held:
 "`[W]hen it is established that the court, without some overruling necessity therefor,' communicates with the jury in the jury room, in the absence of the parties and their counsel, `and without reasonable notice to them and opportunity to be present,' we should treat such communications as `conclusively prejudicial' being a deprivation of the constitutional right to a fair trial to which every party litigant is entitled."
286 Ala. at 605, 243 So.2d at 710 (quoting Feibelman v. Manchester FireAssurance Co., 108 Ala. 180, 204, 19 So. 540, 550 (1896)). Consequently, this Court determined that a new trial was necessary to remove the "prejudicial effect of the entry into the jury room by the trial judge."Matthews, 286 Ala. at 605, 243 So.2d at 710.
We agree that if the trial court answered a question propounded by the jury, outside of counsel's presence, as Petty-Fitzmaurice alleges, those communications were improper. Communications between a trial court and a jury that are off the record and where counsel is not present have the potential to unduly influence a jury's verdict. Edwards v. Seaboard CoastLine R.R., 384 So.2d 96 (Ala. 1980). In addition, such communications adversely affect the public's confidence in the judicial system. As this Court stated in Edwards:
 "`Whether or not injury or injustice has resulted to the litigants by reason of *Page 774 
the conduct, is not our primary concern. Rather, our concern is with the implication that attaches to the administration of justice under these circumstances. Confidence in our judicial system is imperiled if such conduct is countenanced in jury trials. Conduct which if proved would give rise to doubt and disrespect, or the mere appearance of such conduct as will not meet with the approval of public opinion, must be severely condemned. It is only through the granting of a new trial in situations like this, as well as vigilant efforts by the officers of the court to prevent such occurrences, that public confidence in the jury system may be preserved.'"
384 So.2d at 104 (quoting Matthews, 286 Ala. at 603, 243 So.2d at 708, quoting in turn Daniels v. Bloomquist, 258 Iowa 301, 306-07,138 N.W.2d 868, 872 (1965)).
However, our inquiry does not end with the determination that the trial court erred in denying Petty-Fitzmaurice's motion for a new trial if, in fact, the trial court made the alleged communications with the jury during its deliberations. Steen argues in his brief to this Court that Petty-Fitzmaurice, in his postjudgment motions, presented "no competent legal evidence . . . to support the assertion that the trial court responded to any question from the jury as alleged." Steen points out that the only evidence offered in support of Petty-Fitzmaurice's motions was the affidavit of his counsel, which acknowledges that counsel did not witness the alleged communications and that he does not have personal knowledge that the alleged communications occurred. Consequently, Steen contends, counsel's affidavit is inadmissible hearsay evidence. SeeWilliams v. Dan River Mills, Inc., 286 Ala. 703, 708, 246 So.2d 431, 435
(1971) (where the trial court held an affidavit inadmissible where "the affiant had no personal knowledge of the matters to which he deposed").
Steen relies upon Jefferson County v. Kellum, 630 So.2d 426, 427-28
(Ala. 1993), for the proposition that "`hearsay evidence is not admissible in support of a motion for new trial . . . [and that] [a]ffidavits in support of a motion for a new trial should be based on the knowledge of the affiant and not on hearsay.'" (Quoting 66 C.J.S. NewTrial § 172 (1970).) Steen also asserts in his brief to this Court that Petty-Fitzmaurice could have presented affidavits of the jurors as evidence "that the trial court provided [an] additional instruction to the jury, if that did, in fact, occur." See Whitten v. Allstate Ins.Co., 447 So.2d 655, 657 (Ala. 1984) (stating that a juror's affidavit is admissible to prove extraneous influence on the jury). Steen argues that because Petty-Fitzmaurice did not present any competent evidence to support his allegations that the trial judge improperly communicated with the jury, we cannot hold that the trial court erred in denying Petty-Fitzmaurice's motions.
Petty-Fitzmaurice argues, in his reply brief, that his counsel's affidavit is not hearsay. Petty-Fitzmaurice contends that Steen's counsel told his counsel of the alleged communications. Therefore, he argues, the statements in his counsel's affidavit are admissions by a party opponent under Rule 801(d)(2), Ala.R.Evid.Petty-Fitzmaurice also argues that even if his counsel's affidavit is hearsay, it would be admissible because Steen did not object to the affidavit when Petty-Fitzmaurice submitted it to the trial court with his postjudgment motions. Petty-Fitzmaurice contends that Steen cannot object to the affidavit of his counsel for the first time on appeal. See Neal v. Neal, [Ms. 1991439, Sept. 6, 2002]856 So.2d 766 (Ala. 2002); American Fire Cas. Co. v. Archie,409 So.2d 854, 857 (Ala.Civ.App. 1981).
We pretermit a discussion of whether the affidavit of Petty-Fitzmaurice's counsel *Page 775 
constitutes hearsay, because even if it is, Steen waived his argument that the affidavit is inadmissible by failing to object when the affidavit was presented to the trial court. This Court has held that a party cannot argue on appeal that an affidavit contains inadmissible hearsay when the party did not object to the affidavit when it was submitted to the trial court. Rickard v. Shoals Distrib., Inc.,645 So.2d 1378, 1381 n. 2 (Ala. 1994) (stating, in the context of a summary judgment, that Rickard did not object to the affidavit on the grounds of hearsay before the trial court, "so the objection is now waived and cannot be raised on appeal"). This Court also noted the importance of objecting to an affidavit on the basis that the affidavit contains hearsay in Jefferson County v. Kellum, the case Steen relies upon for its holding that affidavits in support of a motion for a new trial should be based on the knowledge of the affiant. 630 So.2d at 428.
In Kellum, this Court reviewed an order granting a new trial and considered whether, based on allegations of juror misconduct, the trial court properly granted Kellum's motion for a new trial. Kellum attached an affidavit to his brief filed in this Court in support of his claim of juror misconduct; however, Kellum had not previously filed the affidavit in the trial court. This Court reversed the trial court's order granting a new trial and held that "no competent legal evidence of juror misconduct appear[ed] in the record." Kellum, 630 So.2d at 427. This Court, after refusing to consider an affidavit submitted for the first time on appeal, noted "that even if the affidavit had been properly presented to the trial court, it would have been excluded upon theCounty's objection; the affidavit is hearsay and does not fall within any recognized exception to the hearsay rule." Kellum, 630 So.2d at 427 (emphasis added). See also Harrison v. Baker, 260 Ala. 488, 71 So.2d 284
(1954), reviewing a trial court's order granting a new trial in light of an affidavit of counsel containing hearsay as to what the jury considered during deliberations. The Court stated:
 "It is urged that the court erred in considering the affidavit of Mr. Johnston, attorney for defendant, to which reference has been made. This is on two grounds: (1) that it is hearsay evidence and (2) it is in respect to the deliberations of the jury. We think it is subject to both contentions. It was hearsay."
260 Ala. at 492, 71 So.2d at 288. However, before it made the foregoing holding, the Court in Harrison noted:
 "The judgment of the [trial] court recited the fact that defendant `offered in evidence an ex parte affidavit pertaining to a statement made by a juror, after original trial, pertaining to the testimony that, as he understood it, was considered by the jury in its deliberations in reaching a verdict for the plaintiff', and that objection was made to the affidavit."
260 Ala. at 491, 71 So.2d at 286 (emphasis added). Without a predicate objection, an affidavit containing hearsay, and we assume that for purposes of this discussion no hearsay objection was made, is competent evidence in support of a motion for a new trial.
The record does not reflect any objection by Steen to the affidavit of Petty-Fitzmaurice's counsel when it was submitted to the trial court with Petty-Fitzmaurice's motion for a new trial and his subsequent motion to reconsider. Consequently, Steen cannot, for the first time on appeal, ask us to disregard the contents of counsel's affidavit. The affidavit of Petty-Fitzmaurice's counsel clearly states that the trial judge, during jury deliberations and outside the presence of Petty-Fitzmaurice and his counsel, answered at least one of the jury's *Page 776 
questions dealing with apportionment of fault between Petty-Fitzmaurice and the settling defendants. This communication violates the general rule that a "judge may not, in the absence of counsel, further instruct the jury, after [its] retirement, without making a reasonable effort to notify counsel or without some special circumstances or excuse being shown which reasonably prevented notice." Matthews, 286 Ala. at 604, 243 So.2d at 708. Under settled precedent, such communication is "`conclusively prejudicial.'"Matthews, 286 Ala. at 605, 243 So.2d at 710.
The trial court's order denying Petty-Fitzmaurice's motion for a new trial is reversed and this cause is remanded for a new trial.
REVERSED AND REMANDED WITH INSTRUCTIONS.
HOUSTON, SEE, BROWN, JOHNSTONE, HARWOOD, WOODALL, and STUART, JJ., concur.
MOORE, C.J., dissents.