Gerald Chandler appeals from a judgment of the Jefferson Circuit Court enforcing a jury verdict of $15,000 returned in favor of Sam A. Virciglio, Jr., for amounts due on a loan. We reverse and remand.
On January 27, 2006, Virciglio filed in the trial court a complaint that asserted claims of breach of contract and equitable estoppel relating to a $20,000 loan that Virciglio had made to Chandler. In the complaint Virciglio stated that the loan was subject to an oral agreement that it would be payable on demand, that Virciglio had made a written demand on the loan on January 3, 2006, and that Chandler had failed to make any payments on the loan. Chandler answered on February 27, 2006.
On December 20, 2006, Chandler filed a motion to dismiss Virciglio's claims. In his motion to dismiss, Chandler alleged that he had satisfied his indebtedness to Virciglio by transferring to Virciglio stock in a privately held corporation and that Virciglio's claims were barred by the applicable statute of limitations. The trial court denied Chandler's motion to dismiss on January 3, 2007.
On February 23, 2007, Chandler filed a motion for a summary judgment, alleging similar grounds to those alleged in his December 2006 motion to dismiss. Virciglio responded to Chandler's motion for a summary judgment on February 26, 2007.
The trial court failed to rule on Chandler's motion for a summary judgment, and the case proceeded to trial before a jury on February 28, 2007. The only testimony included in the record on appeal is portions of Virciglio's testimony. Virciglio testified that he and Chandler first met by virtue of their wives' friendship in July 1996 when Chandler was in the hospital to undergo major surgery. Virciglio stated that, on two separate occasions before Chandler had his surgery, Chandler had requested that Virciglio loan him $10,000 so that Chandler could "tie up some loose ends" in case Chandler did not survive the surgery. Virciglio testified that he had agreed to assist Chandler and that he had loaned Chandler a total of $20,000 via two separate $10,000 checks. Virciglio stated that he and Chandler had never executed a written loan agreement and that he had expected Chandler to repay him as soon as Chandler could. Virciglio testified that he and Chandler had never discussed an interest rate for the loan and that he had not intended to charge interest on the loan.
Virciglio testified that in early 1998 he contacted Chandler regarding the loan and *Page 306 
asked Chandler "when will you be able to pay back my money?" Virciglio testified that when he discussed repayment with Chandler in 1998, Chandler stated that he did not have the money to pay Virciglio. Virciglio stated that Chandler offered Virciglio stock in Proweh Health Systems, Inc. ("Proweh"), a privately held corporation, in satisfaction of the loan. Virciglio testified that he refused to accept the Proweh stock as payment on the loan and that he told Chandler that he would accept the stock as collateral on the loan with the expectation that Chandler would repay the loan in cash. Virciglio stated that Chandler agreed to transfer the stock to Virciglio as collateral on the loan. Virciglio submitted into evidence a stock certificate that indicates that on April 9, 1998, Proweh issued to Virciglio 5,000 shares of its stock. The stock certificate lists Virciglio as the owner of the stock. Virciglio presented no testimony as to the value of the Proweh stock at the time of trial. Virciglio stated that, in January 1998, he purchased some Proweh stock at a price of $5 per share but that he did not know what the stock was worth subsequently.
Virciglio also submitted into evidence two letters. The first letter, dated October 12, 2004, was a letter Virciglio sent Chandler requesting that Chandler contact him to work out repayment of the loan. The second letter, dated June 23, 2005, was a letter sent by Virciglio's attorney at the time, Thomas Buck, to Chandler requesting that Chandler contact Buck to make arrangements for repaying the loan. Virciglio testified that, as of trial, Chandler had not made any payments on the loan.
On April 5, 2007, the trial court entered the following judgment:
 "This cause came on for trial on February 28, 2007. Counsel for all parties were present. Prior to the commencement of the trial [Chandler] filed a Motion in Limine which was Overruled. At the conclusion of [Virciglio's] evidence and at the conclusion of all of the evidence [Chandler] moved for a Judgment as a Matter of Law, which was Overruled. The parties filed written requests for jury instructions which were considered by the Court and included in the Court's oral instructions or were otherwise Overruled. After final arguments by counsel for both parties and instructions by the Court the jury commenced its deliberations and returned the following verdict:
 "`We, the Jury, find in favor of the Plaintiff, Sam A. Virciglio, Jr., and against the Defendant, Gerald Chandler, and assess the Plaintiffs damages at: Fifteen Thousand Dollars ($15,000.00).
 "`[M.F.]
 Foreperson'
 "Pursuant to the jury verdict rendered in this case, Judgment is entered in favor of the Plaintiff, Sam A. Virciglio, Jr. and against the Defendant, Gerald Chandler in the amount of $15,000.00. Costs are taxed against [Chandler]."
 Chandler filed a postjudgment motion requesting a judgment as a matter of law or, in the alternative, that the trial court alter, amend, or vacate the April 5, 2007, judgment or grant him a new trial. The trial court denied Chandler's postjudgment motion, and Chandler timely appealed to this court. On appeal, Chandler argues that the trial court erred in failing to grant his motion for a judgment as a matter of law.
 "`"A judgment as a matter of law is proper only where there is a complete absence of proof on a material issue or where there are no controverted questions of fact on which reasonable people could differ and the moving party is *Page 307 
entitled to a judgment as a matter of law."' Southern Energy Homes, Inc. v. Washington, 774 So.2d 505, 510-11 (Ala. 2000), quoting Locklear Dodge City, Inc. v. Kimbrell, 703 So.2d 303, 304 (Ala. 1997). In reviewing the denial of a motion for a judgment as a matter of law, this Court is required to view the evidence in a light most favorable to the nonmovant. Kmart Corp. v. Kyles, 723 So.2d 572, 573 (Ala. 1998)."
Liberty Nat'l Life Ins. Co. v. Daugherty,840 So.2d 152, 156 (Ala. 2002).
Chandler's first argument on appeal is that, as a matter of law, Virciglio's claims were barred by the applicable statute of limitations in § 6-2-34, Ala. Code 1975. Section 6-2-34
provides, in part:
"The following must be commenced within six years:
 ". . . .
 "(5) Actions for the recovery of money upon a loan. . . ."
Chandler argues that Virciglio's loan to Chandler was a loan payable on demand and that, therefore, Virciglio's cause of action for recovery on that loan accrued, and the limitations period began to run, on the date the loan was made.
Virciglio argues that the limitations period did not begin to run on his loan to Chandler until Virciglio demanded payment on the loan. The trial court adopted the approach advocated by Virciglio and gave the jury the following instruction:
 "The plaintiff alleges that the loan in this case was a demand loan, that is a loan due on demand. Suit must be commenced upon an unwritten demand loan within six years. If you find that the plaintiff demanded payment . . . on the loan more than six years before filing this suit on January 27th, 2006 and the loan was not paid, you must find for the [defendant]."
This court's research reveals no Alabama cases that directly address the issue presented in this case, namely when a cause of action for recovery on an oral loan agreement accrues and when the limitations period begins to run when the loan agreement fails to specify a time for repayment. However, at least one Alabama case, Owen v. Henderson,7 Ala. 641 (1845), has applied the rule that Chandler advocates to awritten loan agreement. In Owen, our supreme court held that, when two parties had entered into a written loan agreement that did not specify a repayment deadline, the loan was repayable on demand, and the statute of limitations began to run from the date of the loan. Id. at 645. Further, the majority of courts in other jurisdictions to address the issue in the context of an oral loan agreement have held that a claim on an oral loan agreement with no repayment deadline accrues, and the statute of limitations begins to run, on the date that the loan is made. See, for an index and discussion of relevant cases, Jay M. Zitter, Annotation,When Statute of Limitations Begins to Run Against ActionBased on Unwritten Promise to Pay Money Where There Is NoCondition or Definite Time for Repayment, 14 A.L.R.4th 1385 (1982).
A small minority of courts have adopted the approach Virciglio advocates, namely that the limitations period does not begin to run on an oral loan agreement that does not specify a repayment deadline until the creditor actually demands repayment on the loan. See id.
However, even if we assume, without deciding, that the trial court erred by not determining that the limitations period began to run from the date the loan was made, we cannot address Chandler's argument because Chandler failed to preserve *Page 308 
that issue for appellate review. Rule 51, Ala. R. Civ. P., provides, in part:
 "No party may assign as error the giving or failing to give a written instruction, or the giving of an erroneous, misleading, incomplete, or otherwise improper oral charge unless that party objects thereto before the jury retires to consider its verdict, stating the matter objected to and the grounds of the objection."
As our supreme court has stated, "[b]y failing to object before the jury retires to deliberate, a party waives any error in the court's instructions." Adriatic Ins. Co. v.Willingham, 567 So.2d 1282, 1282 (Ala. 1990). Furthermore,
 "`[u]nchallenged jury instructions become the law of the case. Louisville Nashville R.R. v. Atkins, 435 So.2d 1275 (Ala. 1983).' Clark v. Black, 630 So.2d 1012, 1017 (Ala. 1993). `The jury is bound to follow such instructions, even if they are erroneous. Lee v. Gidley, 252 Ala. 156, 40 So.2d 80 (1949) (erroneous instructions became the law of the case, and a judgment entered on the jury's verdict comporting with those instructions would not be reversed on appeal).' 630 So.2d at 1017."
BIC Corp. v. Bean, 669 So.2d 840, 844 (Ala. 1995).
Although the record reveals that Chandler submitted a proposed jury instruction to the trial court reflecting the statute-of-limitations standard he advocates on appeal, the record does not reflect that Chandler objected to the trial court's jury instruction before the jury retired. Therefore, Chandler has waived any argument with regard to the trial court's jury instructions, and those instructions have become the law of the case.
Chandler next argues that, even if the statute of limitations did not begin to run on Virciglio's claims until Virciglio demanded repayment on the loan, Virciglio's claims are still time-barred because Virciglio admitted that he demanded repayment of the loan in 1998. We agree.
During the trial, Virciglio and David Anderson, Chandler's attorney, engaged in the following exchange regarding whether Virciglio had stated in a deposition that he demanded repayment of the loan in 1998:
 "Q. Do you recall while we were in the deposition that we were discussing whether your demand actually came before the April 1998 stock certificate that was issued to you?
 "A. I don't recall, but if it's in the deposition, I'm sure it is there.
 ". . . .
 "Q. I'm going to show you your deposition testimony here, and I want you to read lines one through four.
 "A. Through four? `Question, so the only conversation you had actually with him about the actual loan was the 1998 conversation; correct? That's correct.'
 "Q. Does this refresh your recollection about whether or not you demanded the money in 1998?
 "A. If — you know, with the dates, I know I demanded the money but I can't tell you exactly what date it was.
 ". . . .
 "Q. You demanded repayment of the money in 1998, didn't you?
 "A. I demanded a repayment of the money, but I can't give you the specific date or year. If that's what the record shows, then I stipulate to it.
 "Q. Okay. I'm going to have you read and see if we can get this clear. You can read this to yourself, and then I will ask you some questions. I'm trying to refresh your recollection so we can get it on the record. Hold on one second. I want you to read — you can start *Page 309 
here (indicating) on line three. Read it to yourself, the sentence starts half way through.
 ". . . .
 "Q. . . . On line four, we're talking about a stock certificate that is issued in April of 1998.
 . . . .
 "Q. Okay. Go ahead and read from line three on.
 "A. `Of 1998, and it's number 174. Defendant's Exhibit 7 is dated 4/9/1998, and it is certificate number 201. Answer okay. Question, does this help you clarify? Answer, yes, and your question is? Question, so can you describe to me the circumstances of why you were issued this Defendant Exhibit 7? Answer, yes. We'll start back from the beginning when I asked Mr. Chandler to repay me the money was owed. Question, when did you ask him to do that? Answer, I can't recall the specific date or time? Question, was it before this? Answer, yes. . . .'
 "Q. And this that we were referring to, wasn't that the April 1998 stock certificate?
 "A. Yes."
(Emphasis added.)
Although the above dialogue is admittedly not a model of clarity, it does indicate that Virciglio stipulated at trial, based on his deposition testimony, that he had demanded repayment on the loan before April 9, 1998. As this court has explained, "[w]hen the parties stipulate to an issue of fact in open court, no further evidence is required on the point."Werner Co. v. Davidson, 986 So.2d 455, 461
(Ala.Civ.App. 2007). If we apply the rule adopted by the trial court that the statute of limitations began to run on the loan when Virciglio first demanded repayment, then, based on Virciglio's stipulation, the statute of limitations began to run on Virciglio's claims in 1998. Because Virciglio did not file his claims against Chandler until January 2006, at least seven and one-half years after his claims accrued, those claims are barred by § 6-2-34 as a matter of law. Accordingly, Chandler was entitled to a judgment as a matter of law on the ground that Virciglio's claims are barred by § 6-2-34.
We reverse the trial court's judgment and remand the case for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
PITTMAN, THOMAS, and MOORE, JJ., concur.
THOMPSON, P.J., dissents, without writing.