MOORE, Judge.
 

 On December 31, 2001, Mark Armstrong purchased a 2002 Mazda Protégé automobile from Mitchell Motors, an authorized dealer of Mazda products. Armstrong paid $18,806.97 for the vehicle, which was covered by a “New Vehicle 36-month/50, 000 Mile Limited Warranty” that contained the following express warranty provision:
 

 “Mazda [North American Operations] warrants that your new Mazda Vehicle is free from defects in material or workmanship, subject to the following terms and conditions. A Mazda Dealer will make necessary repairs, using new or remanufactured parts, to correct any problem covered by this warranty without charge to you.”
 

 After discovering that, on long trips in hot weather, the air-conditioning system in the vehicle sometimes blew hot air or “fog,” Armstrong returned the vehicle to Mitchell Motors for repairs on several occasions in 2002 and 2003, during the
 
 *1254
 
 warranty period. In accordance with the express warranty, Mitchell Motors attempted to correct the air-conditioning problem at no cost to Armstrong, but it was unable to do so to Armstrong’s satisfaction.
 

 On December 23, 2003, Armstrong sued Mazda Motor of America, Inc., d/b/a Mazda North American Operations (“Mazda”), asserting claims of breach of express warranty under the Alabama Commercial Code and under 15 U.S.C. § 2310(d)(1)(A), a part of the “Magnuson-Moss Warranty-Federal Trade Commission Act” (hereinafter referred to as “the Magnuson-Moss Warranty Act”).
 
 [1]
 

 At a jury trial in December 2007, Armstrong presented only the following testimony on the issue of damages:
 

 “Q. What’s your opinion [as to the value of the vehicle]?
 

 “A: My opinion is that it was worth the amount of money I paid for it assuming that the air conditioner was working. And I wouldn’t give you anything for a car that was brand new for an air conditioner that didn’t work.
 

 “Q: Are you saying the car has no value?
 

 “A: I’m saying that with an automobile — with a new automobile with an air conditioner that doesn’t work, that it has little to no value to me since I purchased it with one that was supposed to be working.”
 

 Armstrong admittedly had no out-of-pocket expenses and he did not seek to recover consequential damages, which were excluded from coverage by the terms of the express warranty. Armstrong also testified that he had paid finance charges totaling $2,500 in connection with his purchase of the Mazda vehicle.
 

 On December 5, 2007, the jury returned a verdict in favor of Armstrong awarding him $2,500 in compensatory damages. The trial court entered a judgment on the jury’s verdict and allowed Armstrong 30 days to seek an award of attorney fees. Armstrong then filed a motion, as the prevailing party, to recover attorney fees and costs, pursuant to 15 U.S.C. § 2310(d)(2). In his motion, he sought a total of $35,508.75 in attorney fees and a total of $3,780.22 as costs. On August 11, 2008, the trial court entered a judgment on the jury’s verdict, awarding Armstrong $2,500 in damages, and1 awarding Armstrong $2,500 in attorney fees and $2,847.94 in costs. Mazda filed a postjudgment motion seeking a judgment as a matter of law or, in the alternative, a new trial; the trial court denied that motion.
 

 Armstrong timely appealed. On appeal, Armstrong argues that the trial court exceeded its discretion in its award of attorney fees and costs. Mazda cross-appealed. Mazda argues that the trial court erred in denying its motion for a new trial. Specifically, Mazda argues that it is entitled to a new trial because, it says, the evidence does not support the award of damages to Armstrong. Because the resolution of Mazda’s cross-appeal potentially disposes of all the issues raised by the parties, we address the cross-appeal first.
 

 Under Aabama law, “ ‘ “[j]ury verdicts are presumed correct, and this presumption is strengthened by the trial court’s denial of a motion for a new trial. Therefore, a judgment based on a jury verdict will not be reversed unless it is
 
 *1255
 
 ‘plainly and palpably’ wrong.” ’ ”
 
 Petty-Fitzmaurice v. Steen,
 
 871 So.2d 771, 773 (Ala.2003) (quoting
 
 Tanksley v. Alabama Gas Corp.,
 
 568 So.2d 731, 734 (Ala.1990), quoting in turn
 
 Davis v. Ulin,
 
 545 So.2d 14, 15 (Ala.1989)). A jury is vested with a large measure of discretion in awarding damages and a judgment entered on a jury’s verdict should not be reversed “unless ... the verdict is wholly inconsistent” with the evidence.
 
 Stinson v. Acme Propane Gas Co.,
 
 391 So.2d 659, 661 (Ala.1980). Based on that standard, “ ‘[wjhere, ... the jury verdict cannot be justified upon any reasonable hypothesis presented by the evidence, it ought to be set aside upon proper proceedings as being the result of compromise or mistake.’ ”
 
 Ferguson v. Cadle Co.,
 
 816 So.2d 473, 476 (Ala.2001) (quoting
 
 Donavan v. Fandrich,
 
 265 Ala. 439, 440, 92 So.2d 1, 2 (1957));
 
 see also Parsons v. Aaron,
 
 849 So.2d 932, 949 (Ala.2002) (“[Djamages may not be awarded where they are remote or speculative. A jury must have some reasonable basis for the amount of its award.”); and
 
 Systrends, Inc. v. Group 8760, LLC,
 
 959 So.2d 1052, 1079 (Ala.2006) (concluding that the trial court erred in denying the defendant’s motion for a new trial because there was no evidentiary basis from which the jury could have quantified the plaintiffs damages in monetary terms).
 

 With certain exceptions not applicable here, § 7-2-714(2), Ala.Code 1975, provides that “[t]he measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted.” The trial court charged the jury on that measure of damages and neither party raised any objection to that instruction. Thus, the jury was obligated to apply this instruction to the evidence in determining its award of damages for breach of express warranty.
 
 See Chandler v. Virciglio,
 
 997 So.2d 304, 308 (Ala.Civ.App.2008) (stating the well-recognized principle that unchallenged jury instructions, even where erroneous, become the law of the case and that a jury is bound to follow such instructions).
 

 Armstrong presented evidence establishing the purchase price of the vehicle, $18,806.97, which established the value of the vehicle at the time of acceptance if the vehicle had been as warranted.
 
 See, e.g., Thompson Chrysler-Plymouth, Inc. v. Myers,
 
 48 Ala.App. 350, 264 So.2d 893 (Civ.App.1972) (recognizing that the purchase price of personal property is admissible to show the value of such property at the time and place of purchase). As for the value of the vehicle as accepted, i.e., with the damaged air-conditioning system, Armstrong presented only his testimony that the vehicle was worthless to him in that condition.
 
 See, e.g., Harlan v. Smith,
 
 507 So.2d 943 (Ala.Civ.App.1986) (the purchaser-occupant’s opinion as to the value of his mobile home constituted sufficient legal evidence to establish the value of that mobile home). Thus, if the jury accepted Armstrong’s testimony, it should have awarded him $18,806.97, not $2,500.
 

 On the other hand, if the jury rejected Armstrong’s testimony, it would have had no basis for awarding him $2,500. The only mention of that figure pertained to the finance charges incurred by Armstrong over the life of his purchase contract. However, the amount of finance changes does not relate to the difference in the value of the vehicle as warranted and its value at the time of acceptance, which is the applicable measure of damages. The jury could not have legitimately based its verdict on the amount of finance charges Armstrong paid. Thus, the verdict appears to be without evidentiary basis.
 
 [2]
 

 
 *1256
 
 In
 
 Razor v. Hyundai Motor America,
 
 222 Ill.2d 75, 305 Ill.Dec. 15, 854 N.E.2d 607 (2006), a case we find persuasive on the issue under consideration, Razor purchased a new Hyundai automobile from a dealer and received a new-car warranty from Hyundai. 222 Ill.2d at 79, 305 Ill. Dec. 15, 854 N.E.2d at 611. Shortly thereafter, Razor began complaining that the automobile would not start on occasion. 222 Ill.2d at 79-80, 305 Ill.Dec. 15, 854 N.E.2d at 611-12. When the dealer was unable to repair the automobile to Razor’s satisfaction, Razor sued Hyundai, asserting breach-of-warranty claims pursuant to the Magnuson-Moss Warranty Act and pursuant to Illinois’s Commercial Code. 222 Ill.2d at 80-81, 305 Ill.Dec. 15, 854 N.E.2d at 612.
 

 At trial, Razor presented a copy of her purchase contract and established the purchase price for the automobile; however, the trial court would not allow Razor to give her opinion as to the decrease in the automobile’s value as a result of the alleged defects. 222 Ill.2d at 81-82, 305 Ill.Dec. 15, 854 N.E.2d at 612-13. Razor was only allowed to opine that the automobile had “proven unreliable” and that “given the problems that this vehicle — that I have had with this vehicle or the problems the vehicle has had, that’s like a used car. I would not pay that for a new car with used problems as it were.” 222 Ill.2d at 82, 305 Ill.Dec. 15, 854 N.E.2d at 612-13. Razor offered no other evidence of damages. At the time of the trial, she was still driving the automobile. 222 Ill.2d at 82, 305 Ill.Dec. 15, 854 N.E.2d at 613. The jury awarded Razor $5,000 on her breach-of-warranty claim for the diminished value of the automobile. 222 Ill.2d at 83, 305 Ill.Dec. 15, 854 N.E.2d at 613. Hyundai appealed, arguing, among other things, that the evidence was insufficient to support the jury’s award of damages on the breach-of-warranty claim. 222 Ill.2d at 84, 305 Ill.Dec. 15, 854 N.E.2d at 614.
 

 On appeal, the Illinois Supreme Court reversed the jury’s verdict, concluding that the jury had heard insufficient evidence on the issue of damages:
 

 “In this case there was no sufficient basis for the jury’s $5,000 award. There was no documentary evidence submitted on the damages question, nor was there expert testimony. The only possible evidence of how much the vehicle’s value decreased is plaintiffs testimony, and plaintiffs only testimony which touches on the subject was that she would not today pay the pi'ice she had originally paid for the vehicle, because ‘given the problems that this vehicle — that I have had with this vehicle or the problems the vehicle has had, that’s like a used car. I would not pay that for a new car with used problems as it were.’ There is simply no way for the jury to get from this testimony to a $5,000 award without engaging in speculation and conjecture. ‘ “[I]n proving damages, the burden is on the plaintiff to establish a reasonable basis for computing damages.” ’
 
 Snelson v. Kamm,
 
 204 Ill.2d 1, 33, 272 Ill.Dec. 610, 787 N.E.2d 796 (2003), quoting
 
 Gill v. Foster,
 
 157 Ill.2d 304, 313, 193 Ill.Dec. 157, 626 N.E.2d 190 (1993). In this case, plaintiff failed to do so.
 

 “Plaintiff notes that the price of the car was also entered into evidence and suggests that jurors have sufficient familiarity with cars and breakdowns that they ought to be permitted to determine for themselves how much a car’s value would be diminished by events of the
 
 *1257
 
 type which occurred in this case. Plaintiff cites a number of cases which suggest that damages may be proven in any manner which is ‘reasonable,’ and also notes that our appellate court has held that ‘[wjhere the right of recovery exists the defendant cannot escape liability because the damages are difficult to prove.’
 
 Burrus v. Itek Corp.,
 
 46 Ill. App.3d 350, 357, 4 Ill.Dec. 793, 360 N.E.2d 1168 (1977).
 

 “We agree that damages may be proven in any reasonable manner, as a general proposition of law ... but this begs the question whether damages were proven in a reasonable manner in this case. The answer is clearly no. Although jurors are not required to check their common sense at the courtroom door ..., we are not prepared to endorse the proposition that jurors are as a class sufficiently familiar with automobiles as to be able to determine the degree of diminution of a particular vehicle’s value based on a particular defect without the need for any evidence at all. This is more than a matter of simple common sense. Plaintiff testified, in essence, that ‘It wasn’t worth what I paid for it.’ There was no number presented, nothing for the jury to work from.
 

 “... [Assuming that plaintiff suffered some damage, there must be some basis for a jury’s damage award, and we can see no process other than speculation by which the jury could have translated the evidence presented by plaintiff to an award of $5,000. We note that even in
 
 Bums,
 
 itself a [Uniform Commercial Code] case in which a dissatisfied buyer was attempting to recover for the value of defective goods, the record included ‘testimony as to ‘the actual value of the defective [goods] at time of acceptance.’
 
 Bumis,
 
 46 Ill.App.3d at 357, 4 Ill.Dec. 793, 360 N.E.2d 1168. In this case, by contrast, there is nothing, truly not a scintilla of evidence to support any particular verdict at which the jury might have arrived — much less the suspiciously round number of $5,000.”
 

 Razor,
 
 222 Ill.2d at 107-09, 305 Ill.Dec. 15, 854 N.E.2d at 626-27. Because the jury’s verdict could not be supported by the evidence, the Illinois Supreme Court reversed the judgment entered on that verdict and remanded the cause for a new trial. 222 Ill.2d at 110, 305 Ill.Dec. 15, 854 N.E.2d at 628.
 

 Although the quality of the evidence provided to the jury in this case was slightly higher than that provided in the
 
 Razor
 
 case, the result is the same. In this case, the jury received no evidence from which it could have concluded that, at the time of acceptance, as a result of the defective airconditioning system, the vehicle was worth $2,500 less than as warranted. Consequently, the jury’s award of $2,500 in damages must have resulted from compromise, speculation, or conjecture. Because the jury’s award of damages in this case is unsupported by the evidence, the judgment entered by the trial court is plainly and palpably wrong and the trial court erred in denying Mazda’s motion for a new trial.
 
 See Petty-Fitzmaurice v. Steen,
 
 871 So.2d at 773. We, therefore, reverse the judgment entered by the trial court on the jury’s verdict and remand the cause for a new trial.
 

 Because the new trial may yield different results and affect the award of costs and attorney fees, we find that the issues raised by Armstrong are not ripe for our consideration and we therefore dismiss his appeal; however, we do not intend for any language in this opinion to be construed in any manner as commenting on either the propriety of the award of costs and the propriety of the award of attorney fees or
 
 *1258
 
 the correctness of the amounts of those awards.
 

 APPEAL — DISMISSED.
 

 CROSS-APPEAL — REVERSED AND REMANDED WITH INSTRUCTIONS.
 

 THOMPSON, P.J., and PITTMAN, BRYAN, and THOMAS, JJ., concur.
 

 [1]
 

 . Armstrong also asserted claims of breach of implied warranty, negligence, misrepresentation, revocation of acceptance, and a violation of Ala.Code 1975, § 8-20A-1 et seq., known as the “Alabama Motor Vehicle Lemon Law Rights Act.” The trial court entered a judgment as a matter of law as to those claims. Armstrong does not appeal that judgment.
 

 [2]
 

 . Armstrong argues that the jury heard evidence as to the purchase price of the vehicle,
 
 *1256
 
 the current mileage and age of the vehicle, the "contract," and the bill of sale. Consideration of those items, however, offered no assistance to the jury in calculating the value of the vehicle as accepted.